Argued October 7; reversed November 10, 1931

# HOVEDSGAARD *v.* GRAND RAPIDS STORE EQUIPMENT CORPORATION ET AL.

(5 P. (2d) 86)

40

*Paul R. Harris,* of Portland (Davis & Harris, Donald K. Grant, and A. Hansen, all of Portland, on the brief), for appellant.

*Arthur S. Vosburg,* of Portland (Reynolds, Flegel & Smith, and F. P. Keenan, all of Portland, on the brief), for respondents.

KELLY, J.  The question confronting us here is whether the trial court erred in granting a new trial.

At the time the testimony was offered to the effect that power driven machinery was used in the plant of defendant corporation, plaintiff claimed that the provisions of the Workmen's Compensation Law and of the Employers' Liability Act applied to the case. Under the first named law, an employer who has elected not to contribute to the fund provided thereby is deprived of the defense of contributory negligence: Sections 49-1819 and 49-1820, Oregon Code 1930. Under the latter, contributory negligence is not a defense, but must be taken into account in fixing the amount of the damages: Section 49-1706, Oregon Code 1930; *Donaghy v. Oregon-Washington R. & Nav. Co.*, 133 Or. 663 (288 P. 1003, 291 P. 1017).

The objective of the Workmen's Compensation Law is more comprehensive than the principles which govern the common law action of negligence. Its intendment is less restrictive than the common law definition of "the scope employment": *Lamm v. Silver Falls Timber Co.*, 133 Or. 468, 531 (291 P. 375, 377).

■ It is urged by defendants that prejudicial error is shown in the course taken by plaintiff because, in opposing defendants' motion for nonsuit and also in opposing defendants' motion for a directed verdict, plaintiff invoked the rules of the statutes above mentioned and thereby secured the benefit of their liberality in plaintiff's behalf; and having done that plaintiff ought not to have been permitted to abandon his position thereupon and base his claim for a recovery only upon the principles of the common law. The writer is unable to understand how defendants were prejudiced in this respect. Under the common law, plaintiff's right to recover does not depend upon the question of whether he was under the control of defendants as an employee when he was injured. Any person rightfully using the stairway in question could recover for damages sustained by reason of the negligence of defendants, if any, in maintaining an unsafe and hazardous stairway.

Moreover, the court fully instructed upon the law applicable to the defense of contributory negligence under the principles of the common law. In the court's instructions, no reference was made to the Employers' Liability Act, the Workmen's Compensation Law, or to the testimony mentioned, which was introduced only as tending to show that those statutes were applicable to the case on trial. In the opinion of the writer, the introduction of this testimony was harmless: *Nelson v. United Railways Co.*, 85 Or. 427 (166 P. 763); *Macchi v. Portland Ry. L. & P. Co.*, 76 Or. 215 (148 P. 72); *Astoria Southern Ry. Co. v. Pacific Surety Co.*, 68 Or. 569, 588 (137 P. 857); *Schulte v. Pacific Paper Co.*, 67 Or. 334 (135 P. 527, 136 P. 5).

■■ The record discloses that the stairway whereon plaintiff fell had been oiled at different times. Mr.

Fitch, a witness for plaintiff, testified that a few days before January 29, 1929, he had seen them oiled. The following is an excerpt from his testimony on direct examination:

"Q. Now you were in the employ of the company during the year 1929? A. Yes, sir.

"Q. Up to what time? A. Up to the Spring 1930, February, 1930.

"Q. Now during that time have you ever seen those steps oiled? A. Yes, sir.

"Q. And did they keep them oiled most of that time? A. Why I did see them oiled, yes, right along.

"Q. Up to about what length of time would you say that you saw them? A. I saw them oiled up until January 29th, 1929.

"Q. Now, then, were you there during that time? A. I was there until January 29th, and then I was off six weeks."

On cross-examination, this witness testified thus:

"Q. You say that the stairway was oiled to your knowledge prior to January 29th? A. January 29th.

\* \* \* \* \*

"Q. Do you know how frequently it was oiled? A. No, sir, I don't.

"Q. It was only oiled as much as every month or six weeks; something like that?

"A. I could not say that, but it looked like it was oiled oftener.

"Q. And it was always oiled on Saturday night, was it not?

"A. I couldn't say that.

"Q. Did you ever know of it being oiled any other time?

"A. I never seen anybody oiling it, but I know it was oiled.

"Q. You know it was oiled? A. Yes, sir.

"Q. Just one question please. I understood from your testimony that the stairway was oiled on January 29. A. No, no.

"Q. You don't know how long before January 29th it might have been oiled.

"A. No, it might have been oiled for years, for all I know.

"Q. It might not have been oiled for three or four months?

"A. I left there on January 29th, but it was oiled then.

"Q. Yes, but you don't know when it had been oiled? A. No, sir.

"Q. It may have been two weeks or three weeks or a month.

"A. No, it had the appearance of having been oiled about three or four days previously."

When first called as a witness in his own behalf, plaintiff testified with respect to the oil upon the platform of the stairway where he had fallen:

"Q. Now, what was the condition of the oil on this platform?

"A. Well, that was not dry.

"Q. Well now, would you say that it wasn't dry on the whole platform or just parts of it?

"A. Oh, just part of it. * * *"

When called, after a recess, plaintiff testified further as follows:

"Q. (By Mr. Davis) Now, Mr. Hovedsgaard, I want you to tell the jury the appearance of that platform, after you had fallen and went back there, you said, and looked at it, just tell as to whether or not the entire platform had been oiled and its appearance.

"A. Why, it is like this, Judge: It had been oiled, but it was dried in in places, except one spot where it got a thicker coat than it had the other places and it wasn't dried not so much; that is why; there was some left there. * * *"

We construe the foregoing testimony as tending to prove the fact that the stairway in question had been repeatedly oiled and also as tending to prove the further fact that at the time of plaintiff's injury the place on the platform where plaintiff stepped had received a heavier coat of oil than the other part of the platform. Treating the testimony most favorably to plaintiff, as we must in deciding the propriety of the motion for nonsuit and the motion for a directed verdict for defendants, we hold that the jury might find that these facts were proven and if so from them the jury could also draw the inference that the defendants had oiled the stairway and the platform thereof in such a way that the oil in which plaintiff stepped would not dry sufficiently to render said platform reasonably safe for plaintiff's use.

The case of *DeMars v. Heathman,* 132 Or. 609 (286 P. 144), is a case where plaintiff claimed that there was grease upon a stairway landing in defendant's hotel upon which plaintiff had slipped and injured herself. Plaintiff testified that this grease looked like a gravy meat grease or something like that. There was no testimony that similar material had been repeatedly applied to the stairway before the injury to plaintiff. There was no circumstance whatever upon which either actual or constructive knowledge thereof could be imputed to defendant. In that respect, the case is clearly distinguishable from the one at bar.

In *Lintner v. Wiles,* 70 Or. 350 (141 P. 871), it was sought to infer that defendant placed dynamite caps beneath or near a rock crusher, from the inference that dynamite caps and fuse were necessary to be employed in breaking hard rocks, which latter inference was deduced from the fact that it was the custom to break hard rocks with powder. In that case there

was direct testimony by the defendant's superintendent to the effect that the rocks in question were broken by a heavy sledge and not otherwise. The holding was that the testimony tending to prove the alleged custom was inadmissible.

If, in the case at bar, no evidence of oiling defendants' stairway had been introduced and defendants' superintendent had testified that defendants had never oiled it, and then, if plaintiff had offered testimony that it was a custom among employers of labor maintaining such stairways, as the one in question, to oil them, we would be confronted with the question which was decided in the case just cited, but such is not the record before us.

In *State v. Hembree,* 54 Or. 463 (103 P. 1008), incestuous adultery on defendant's part with his daughter was deduced as an inference from circumstances related by witness, Larsen, and on such inference the jury was permitted, over objection and exception, to base other inferences. This, the court held to be error. The fact of the oiling of the floor in the manner described by plaintiff in the case at bar is supported by direct testimony. The fact of repeated oilings of the floor is likewise supported by direct testimony. The single inference is that defendant did the oiling.

*In Globe Accident Ins. Co. v. Gerisch,* 163 Ill. 625 (45 N. E. 563, 54 Am. St. Rep. 486), the fact that Gerisch lifted a box of ashes was not proven. From the record in that case an inference had to be drawn from the fact that he had been accustomed to lift boxes of ashes, in pursuance of a contract with one Jacobs to carry out the ashes and cinders from the furnace of the latter's greenhouse, in order to support the claim that on the occasion in question Gerisch had lifted a box of ashes; then,

based upon that inference, plaintiff sought to draw the inference that lifting the box of ashes at the time in question was the proximate cause of death.

In the case at bar, there is direct testimony that the plaintiff slipped upon the oiled stairway. The only inference is that defendants oiled the stairway in the manner that plaintiff's testimony tends to prove that it was oiled.

In *United States Cement Co. v. Whitted,* 46 Ind. App. 105 (90 N. E. 481), the court held that from the fact that the ditch of hot water, into which a servant fell, headed in the employer's power house, an inference might be drawn that the water came from the power house, but it could not justify the further inference that the ditch was customarily used as a conduit for hot water. The court say: "For aught appearing in the record, hot water was never in the ditch before the time and occasion when the appellee met with the accident." In the case at bar, repeated and customary oiling of the stairway was shown by direct evidence.

In *Vernon Cotton Oil Co. v. Jones,* 137 S. W. 424, it was held that from the fact that the floor of the meal room on the lower floor of defendants' cotton oil mill had considerable meal in it, the inference could be drawn that a person coming from the meal room would be likely to carry particles of oil meal on his shoes to the linter room, but the further presumption would not be warranted that some one did come up from the meal room to the linter room on the upper floor, nor would the further presumption be warranted that such person walked by the particular linter stand where appellee was working and dropped the meal from his shoes there. In that case, there was no direct testimony that the place where plaintiff was working was oily or greasy. On that point the court say: "It must be said

from the record that there is an entire absence of any evidence warranting the jury in concluding or inferring that the floor in front of or about the linter machine was in any improper condition, or was oily or greasy, or incumbered by anything calculated to make a person fall.''

The case of *Mona v. Erion et al.*, 223 App. Div. (N. Y.) 526 (228 N. Y. S. 533), was decided upon the law and facts. In the case at bar, we are called upon to determine whether, under the law, an inference may be drawn to the effect that defendants oiled the platform of the stairway in question in such a way that the oil into which plaintiff stepped had not dried sufficiently to render the step thus affected reasonably safe.

In the case cited above, the undisputed evidence was that the last time the oil was applied was somewhere from two to four weeks before the plaintiff's fall, when, after its application, it was mopped perfectly dry. In the case at bar there is no such direct testimony; but Mr. Greiwe, a witness for defendants, testified that he was assistant foreman of defendants' machine room; that he would say, from casual observation, it had been at least a week, or possibly a week and a half, before the accident, that the stairs had been oiled. He also testified that they had been accustomed to oiling the steps there.

In the case cited, Mr. Justice Sawyer, speaking for the court, says: ''Viewing the case as a whole, the verdict is entirely against the weight of the evidence.'' In the case at bar, we are not called upon to pass upon the weight of the evidence. The question is whether there is evidence tending to support the plaintiff's material averments.

In the case of *Garland v. Furst Store,* 93 N. J. L. 127 (107 Atl. 38, 39, 5 A. L. R. 275), the premises where the accident happened was the floor of the basement of defendant's department store. We quote from the opinion:

"It was made of solid concrete composition, such as are the floors of bank buildings, and it does not appear that plaintiff slipped upon any foreign substance * * *. The floor was undoubtedly smooth, but, apparently, was not slippery, as it had been traversed by thousands of people every week the four years since its construction, and no one had ever been known to slip there before. It would thus appear that the premises were reasonably safe for the entry thereon of persons resorting to the store, and it is not shown that defendant was guilty of any act which would make them dangerous. In fact, there is no contention to that effect."

The difference between that case and the one at bar is obvious.

*John Thompson Grocery Co. v. Phillips,* 22 Colo. App. 428 (125 P. 563), contains the following statement:

"Then taking the testimony in its most favorable light for the plaintiff we find that she had been for some years a patron of the store, in good health with good eyesight, in a well lighted room, walked down an aisle in the meat department of the store that had just been swept, paused at a counter near a clerk to whom she was about to give an order, slipped and fell, sustaining the injuries complained of, and after being seated, found a piece of fatty substance on her shoe between the ball of the foot and the instep. There is at least no stronger evidence as to defendant's negligence, and there was no testimony offered tending to contradict the evidence of the defendant as to the custom and efforts to keep its store clean and free from refuse and debris upon the floors. Neither is there any testimony tending to show, that defendant could by

the exercise of diligence have discovered the existence of the particular substance in question upon its floor, if it in fact was there, which at best can only be inferred from plaintiff's testimony, to the effect that she found such upon her shoe after the accident.''

This is clearly distinguishable from a case, such as the one at bar, where there is direct testimony as to the hazardous condition of the platform and direct testimony that its dangerous character was due to a greater amount of oil having been applied to the spot where plaintiff stepped than to the other parts of the stairway.

■■ Defendants' contention that plaintiff was contributorily negligent is based upon plaintiff's testimony as follows:

"Q. Well, when you were going up the stairway did you look to see in what condition the stairway was in?

"A. Before I went up?

"Q. Yes.

"A. No, sir, I just went up, that is all.

"Q. You didn't look at it?

"A. I didn't look at it, no.

"Q. Had you looked could you have seen this grease spot?

"A. Well, if I looked at it, I might have seen it, yes.

"Q. You could have seen it if you had looked.

"A. Yes.

"Q. And you didn't look at all?

"A. Well, I look ahead. The smoke was so offensive to me, I wanted to get out of the way quick from that smoke.

"Q. You don't smoke yourself?

"A. No, sir.''

The smoke referred to was smoke from cigarettes.

It can not be said that as a matter of law the plaintiff was negligent in not looking at each step of the stairway in question. The question is one for the jury. In the absence of notice to the contrary, the plaintiff had a right to assume that the stairway provided for his use in going to his work, and that of the other workmen in going to theirs, would be reasonably safe. Whether, in an effort to escape the fumes of his co-laborers' cigarettes, he was justified in looking ahead rather than upon the steps of the stairs he was surmounting constitutes a question of fact rather than one of law.

For these reasons, we hold that the motions for nonsuit and directed verdict were properly overruled.

■ The propriety of giving plaintiff's requested instruction number one depends upon whether that instruction is inconsistent with the other instructions given by the court upon the same subject. It will be noted that this instruction states that defendants would be guilty of negligence if the jury finds from a preponderance of the evidence that defendants permitted the stairway to become hazardous, slick and slippery, and that such condition was one which defendants should have remedied.

As the writer understands defendants' position upon this instruction, it is that the instruction is faulty and erroneous in failing to include a statement therein that in order to constitute negligence it must be proven that defendants knew of the dangerous condition in question, or that such dangerous condition had continued for such a length of time, or under such other circumstances as to impute constructive knowledge thereof to defendants.

Upon reading the other portions of the court's instructions, we are convinced that the word "permitted" in the instruction in question was used in the sense of implying knowledge upon defendants' part in accordance with the meaning ascribed to that word in the following cases: *Lemery v. Leonard,* 99 Or. 670 (196 P. 376); *State v. Cooke,* 130 Or. 552 (278 P. 936); *Texas & New Orleans R. Co. v. Geiger,* 55 Tex. Civ. App. 1 (118 S. W. 179); *Pittsburg etc., R. Co. v. Richardson,* 40 Ind. App. 503 (82 N. E. 536, 537); *Coon v. Froment,* 25 App. Div. 250 (49 N. Y. S. 305, 306); *Clover Creamery Co. v. Kanode,* 142 Va. 542 (129 S. E. 222, 223); *MacFarlane v. Mosier & Summers,* 79 Misc. Rep. 460 (141 N. Y. S. 143, 147).

▮ The court told the jury that "it is only when the stairway has been made dangerous or where it has been knowingly and negligently left in a hazardous, slick, or slippery condition that the defendants can be held liable." The court also gave the following instruction:

"Unless you find from a preponderance of the evidence that at the time of the accident referred to in plaintiff's complaint, the defendant or its responsible officers knew or should have known that the stairway in question was in a dangerous or slippery condition, your verdict must be against the plaintiff and in favor of the defendants."

The court also gave the following instruction:

"If you believe from a preponderance of the evidence that there was a small pool of oil as described by the defendant on the first landing as testified to by the plaintiff and that such pool of oil was there not as a result of the oiling of the stairway by the defendants, but was oil or grease which had been slipped on said stairway accidently, or placed there without the knowl-

edge of defendants or the responsible officers of the defendant corporation, then I instruct you that before the defendants could be held liable for the existence of said pool of oil on said landing you must further find that either the defendants knew of the existence of said pool of oil on said landing of said stairway or should, as reasonably prudent persons, have known thereof. You are not entitled to hold the defendants responsible for a condition existing on the stairway which they did not know of or which as reasonably prudent men they could not have discovered in time to remedy the condition.''

We hold that the issue of defendants' alleged negligence in respect to the condition of the stairway in question was fairly submitted to the jury.

It is unnecessary to review the other grounds upon which defendants' motion for a new trial was based for the reason that they were not regarded as sufficient by the learned trial judge, and no appeal has been prosecuted by defendants.

We are constrained to say that we concur in the trial judge's holding in respect to them.

■ The comment of the court upon the greater number of instructions on defendants' theory of the case than upon plaintiff's theory was cautionary in its nature and not erroneous. It is similar to an instruction to the effect that the giving of many instructions upon the question of damages should not be construed as an indication that the court believed that plaintiff should have a verdict. Such a cautionary instruction has been approved: *Johnston v. Beadle,* 6 Cal. App. 251 (91 P. 1011).

The strong showing by plaintiff in opposition to that of defendants upon the issue of alleged misconduct

of plaintiff, and upon the matter of newly discovered evidence, in our opinion, overcame the effect which otherwise might have been given to defendants' showing thereupon, and constitutes a justification of the course taken by the trial judge in disregarding it.

For the reasons above stated, the order granting a new trial is reversed, and it is ordered that the judgment rendered upon the verdict be reinstated as originally entered.

BEAN, C. J., RAND and ROSSMAN, JJ., concur.