Argued at Pendleton October 27; affirmed November 17, 1936

## SAUNDERS *v.* A. M. WILLIAMS & CO.

(62 P. (2d) 260)

[1]

Department 2.

*Lawrence Lister,* of Portland (E. L. McDougal, of Portland, on the brief), for appellant.

*Donald K. Grant,* of Portland (Maguire, Shields & Morrison, of Portland, on the brief), for respondent.

BEAN, J. Plaintiff Mrs. F. W. Saunders, on October 1, 1934, commenced an action for damages against defendant A. M. Williams & Company, based upon negligence and injuries claimed to have been suffered by plaintiff on October 5, 1932. The defendant operates a department store on Second street in The Dalles, Oregon. The store faces north and there are two entrances, an east and west entrance on Second street, opening into the women's and men's sides. There is a partition between the men's and women's sections of the store, with an archway in the front and the rear, connecting the two sides of the store. To the extreme rear of the store on the east side of the partition are located the offices of the department store, while to the west side of the partition in the rear is located the shoe department. These two are elevated a distance of three steps above the level of the main floor of the store. The floors of the store are of fir and have been laid for about 40 years. Some of the boards are quarter-sawn and have vertical grain in them; others have flat grain.

They have become worn in some places more than in others and the annular rings in the boards stand out by reason of the wear on them. The floors are kept oiled. The oil was applied from two to four times a year, the oiling being done by means of dust mops dipped in cans of oil and the oil mopped about. The oiling was done sometimes by employees and sometimes by "any boy that is looking for a job". Two gallons or so of oil were used each time, and no attempt was made to wipe up the excess oil at the time of application.

On October 5, 1932, plaintiff, who had long been a customer of the store, entered the west entrance on Second street on the men's side and walked back to the shoe department, left a pair of shoes that did not properly fit and then crossed through the rear archway over onto the women's side and down an aisle between the counter and some display tables located on the west side of the main floor of the ladies' section of the department store, and while proceeding along at a normal gait plaintiff slipped and fell, injuring her right arm and shoulder. The charges of negligence against defendant are:

"That defendant was careless, reckless and negligent in that prior to the happening of the injuries herein complained of, defendant, through its agents and employees, placed upon the floor surface of its said store building an excess amount of oily, slippery, liquid substance or material and failed to use reasonable care in applying said oily, slippery, liquid substance or material to the surface of said floor and failed to use reasonable or ordinary care in the maintenance of said floor after the application of said oily, slippery, liquid substance but allowed said floor to remain in a slippery, hazardous and unsafe condition."

On the day that plaintiff entered the store she was wearing "Cuban" heels. Her testimony of what occurred is as follows:

"Q. Well, as you walked along that aisle, what happened?

A. I was walking along the aisle, coming out, and all of a sudden my foot slipped in the oil—oily substance —causing me to lose my balance, and I teetered for a second and then pitched forward. In pitching forward I extended my right arm to break the fall— just threw it up like this, tried to shield my face.

\* \* \* \* \*

Q. What was the condition of your hand and arm at that time?

A. My fingers were extended like that and apperently partially paralyzed at the time being, I could not move them. They were just stiff when Doctor Griffith came. He said, 'My goodness, what has happened?' I said, 'Well, my foot slipped in some oil and I fell forward on my face, threw my arm out to save myself.' He took one look at the arm and said 'My, we better get this into a sling and get you up to the hospital,' which he did. I believe Mr. Shirley gave him a towel and some safety pins and they rigged up a temporary sling, put my arm in it, took me to the hospital. Doctor Griffith was not my physician so he turned me over to Doctor Coberth.

\* \* \*

Q. Do you know which way it slipped, forward or backward or sideways?

A. I just know that my foot hit that oily substance and I lost my balance and it just pitched me forward. That is the only thing I can tell you."

Besides denying negligence, defendant pleaded affirmatively that plaintiff was guilty of contributory negligence in failing to exercise her sense of observation and watch where she was walking and the manner in which she was walking.

The first assignment of error is that the trial court erred in permitting Mrs. Joseph Stadelman to testify regarding two occasions when she stated she had slipped in oil in defendant's store a short time after the accident, to which testimony an exception was taken and allowed, and also the court erred in over-ruling defendant's motion to strike the testimony of Mrs. Stadelman, and that the jury be instructed to disregard it on the ground that it was incompetent, remote, speculative and conjectural, to which motion an exception was duly allowed.

The testimony of Mrs. Stadelman pertaining to the question raised was in part as follows:

"Q. Mrs. Stadelman, I want to ask you whether or not it is not a fact that within a short time after Mrs. Saunders was injured there in Williams' store, which was on or about the 5th day of October, 1932, you did not also slip in that store?

A. I did."

On cross-examination she testified:

"A. Well, I felt that I slipped in oil. I had this skidding sensation, as I said, grabbed this woman, but after I examined it, looked at it, there was a lower place where I think long standing next to the counter would naturally wear where oil would collect."

Defendant submits that the general rule and weight of authority is that evidence of subsequent accidents is not admissible; the exceptions to this rule are cases where accidents occurred on the highways, and then only is the evidence admissible where the condition was observed immediately after the accident and conditions had not changed: Citing *Davis v. O. & C. R. R. Co.*, 8 Or. 172; *Rayburn v. Day*, 126 Or. 135 (268 P. 1002, 59 A. L. R. 1062); *West v. Marion County*, 95 Or. 529 (188 P. 184).

■ In regard to other accidents, injuries or defects, the admissibility of evidence of the existence of similar defects or the occurrence of other accidents or injuries of a similar nature or similarly caused, depends upon the purpose for which the evidence is offered: 45 C. J. 1245, § 808. In general, evidence of the occurrence of other accidents or injuries is not admissible where the issue is simply one of negligence or non-negligence on a particular occasion, except when such other accidents or injuries and the one in question are claimed to have been caused by a continuing defect or condition or a continuing course of negligent action or conduct: 45 C. J. 1246, § 809. To show the dangerous character of the place, method, or appliance, it is stated in 45 C. J. 1246, § 811, as follows:

"Where the dangerous or safe character of the place, method, or appliance which is alleged to have caused the accident or injury is in issue, evidence is admissible in a proper case that other similar accidents or injuries, actual or potential, have theretofore, or at the same time, or thereafter resulted at or from such place, method, or appliance." *Koontz v. O. R. N. Co.*, 20 Or. 3, 15, 16 (23 P. 820); *Robinson v. F. W. Woolworth Co.*, 80 Mont. 431 (261 P. 253, 259); *Taylor v. Northern States Power Co.*, 192 Minn. 415 (256 N. W. 674, 675); *Robinson v. Western States Gas & Electric Co.*, 184 Cal. 401 (194 P. 39, 42); *Columbia Grovery Co. v. Schlesinger* (Ind. App.), 200 N. E. 414, 416.

■ The testimony tended to show that the floors of the department store were oiled from two to four times a year, and as to the general condition of the oil, the testimony of Mrs. Stadelman would tend to show in a remote degree that the floor of the store was oily. Her testimony was not for the purpose of showing negligence. The cross-examination of Mrs. Stadelman by defendant brought out in detail the place where she slipped, which was on the same floor, the condition of

the floor, which was substantially the same as when Mrs. Saunders fell, and the kind of heels she was wearing on her shoes. The record discloses that the answers to the questions, after defendant's objections on direct examination, were not prejudicial and in no way could have influenced the verdict, for identical evidence was already in the record. The facts concerning the former accident were further brought out and reiterated by defendant's cross-examination. It is the rule that admission of evidence will not justify reversal of the case where other evidence to similar effect is in the record without objection, or is brought out by cross-examination, or by other witnesses: *Eaton v. Blackburn,* 52 Or. 300, 309 (96 P. 870, 97 P. 539, 20 L. R. A. (N. S.) 53, 132 Am. St. Rep. 705, 16 Ann. Cas. 1198); *Dibblee v. Astoria & Columbia River R. R. Co.,* 57 Or. 428, 431 (111 P. 242, 112 P. 416); *Benson v. Birch,* 139 Or. 459, 468 (10 P. (2d) 1050). The objecttion goes more to the weight than to the competency of the testimony.

Defendant's motion to strike out the entire testimony of the witness stands upon the same footing. The statement which the defendant particularly desires to have stricken included those brought out on his own cross-examination. The rule is stated in 4 C. J. 703, § 2613, as follows:

"An appellate court will not permit an appellant or plaintiff in error to assign as error the admission of evidence which he himself has introduced, or which he himself elicited by cross-examination of his adversary's witnesses in the trial of the cause in the court below." See also *Compton v. Perkins,* 144 Or. 346 (24 P. (2d) 670).

■ Under all of the circumstances of this case we conclude that the admission of the testimony of Mrs.

Stadelman and the denial of the motion to strike out the same was not a reversible error.

■ Defendant assigns error of the court in failing to grant defendant's motion for a directed verdict in favor of defendant for the reason that the undisputed testimony showed there was no oil on the floor. We do not so read the testimony. Plaintiff testified that "my foot slipped in the oil—oily substance—causing me to lose my balance". Mr. Shirley, one of the employees of the store, testified as a witness for defendant that the floor was worn in places. He further testified:

"Q. As you look at the present gangway and that portion of the gangway which is now under these cross tables, you can see where the oil was not evenly distributed, or was not evenly cleaned, and there are irregular spaces in the boards there where the oil has gathered and dried, isn't it?

A. Yes, it goes all over the store."

The testimony tended to show that the store was regularly oiled and that the place where plaintiff slipped was colored differently from the other part of the floor. Again the plaintiff states, after stating the distance from the bottom of the steps in the shoe department: "Yes, I slipped in some oil."

■ There was a conflict in the testimony as to the condition of the floor and it was a question for the jury to say which party was correct, and also whether defendant maintained the floor in a hazardous condition. The manager of the store testified that he could find no indication of oil on the place where plaintiff slipped.

In actions at law where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury shall be

otherwise reexamined in any court of this state, unless the court can affirmatively say there is no evidence to support the verdict: Oregon Constitution, Art. VII, § 3.

■ We think the testimony of plaintiff to the effect that she slipped in oil, that it felt like oil, and that "when you slip on oil you know", together with testimony that defendant's floors were kept oiled and showed oil spots all over the floor, and the testimony that no foreign matter was found on the floor other than oil, is sufficient to permit the jury to find that the slippery condition of the floor resulted from an ex- cessive amount of floor oil on the same: *Hesse v. Mittleman,* 145 Or. 421 (21 P. (2d) 1022); *F. W. Woolworth Co. v. Brown,* 258 Ky. 29 (79 S. W. (2d) 362); *Blake v. Great Atlantic & Pacific Tea Co.,* 266 Mass. 12 (164 N. E. 486).

■ Evidence of the slippery condition which existed by reason of the excessive amount of floor oil at the place where plaintiff slipped was sufficient to sustain a finding that the defendant failed to maintain the premises in a reasonably safe condition: *Hovedsgaard v. Grand Rapids Store Equipment Corp.,* 138 Or. 39 (5 P. (2d) 86); *Hesse v. Mittleman,* supra; *Rundlett v. Director,* 150 Or. 658 (47 P. (2d) 848); *Busby v. Southwestern Bell Tele. Co.,* 287 S. W. 434; *Trottier v. Neisner Bros.,* 284 Mass. 336 (187 N. E. 619).

■■ Where a floor or step is made slippery by reason of some foreign substance thereon, in such case proof of knowledge of the defendant of the slippery condition sufficiently long before the accident so that it should have remedied it is a requisite to recover by plaintiff. It is the duty of one who conducts a business in a building, to which the public is invited, to maintain such building in a reasonable condition of safety and

to keep the floor reasonably safe to walk upon. See *Lopp v. First Nat. Bank*, 151 Or. 634 (51 P. (2d) 261); *Lyons v. Lich*, 145 Or. 606 (28 P. (2d) 872).

In *De Mars v. Heathman*, 132 Or. 609 (286 P. 144), relied upon by defendant, the court held that a nonsuit should have been granted because of an entire absence of proof of any knowledge of the condition of a foreign substance being on the floor. That case differs from the case at bar where the slippery condition is caused by floor oil and the oil is constantly applied by defendant or its agent. See *Hovedsgaard v. Grand Rapids Store Equipment Corp.*, supra.

■ Where the slippery condition of the floor is caused by oiling or washing done by defendant, then knowledge of the slippery condition is imputed to defendant since the jury may properly infer that the condition resulted from the defendant's own act: *Busby v. Southwestern Bell Tel. Co.*, supra. In that case plaintiff was an employee to whom defendant owed the duty of reasonable care and while she was on her way to a restroom downstairs her foot slipped or turned back under her so that she fell while descending the stairs. One of the allegations of negligence was that the steps were wet and slippery from recent washing and the defendant claimed that in the absence of evidence that it had knowledge of the wet condition of the steps a verdict for plaintiff could not be sustained. The court affirmed the giving of an instruction omitting this requirement.

■ It was not absolutely necessary for plaintiff to testify that she saw oil on the floor where she slipped. The fact that the witness testified it felt like oil is no reason for rejecting her statement of the fact that it was oil upon which she slipped. The testimony to which we have referred, and the circumstances de-

lineated that the floor had been oiled and the worn and peculiar condition of the floor, warranted the jury in finding that the floor was in a slippery and hazardous condition at the place where plaintiff slipped. The case was properly submitted to the jury.

Defendant asserts that the trial court erred and was guilty of an abuse of discretion in refusing to grant defendant's motion for a new trial, based upon the misconduct of the jury, as shown by affidavits filed. It appears that during the trial of the cause a juror, Ernest H. Pratt, visited the store to ascertain the condition of the floor where plaintiff slipped and fell. This was without any fault upon the part of plaintiff. The juror Pratt asked the other jurors whether they had inspected the premises of the defendant, during the progress of the trial, and all replied that they had not done so. It is shown by the affidavit of James E. Thorndike, one of the jurors, that Pratt stated to the other jurors "that during his casual inspection he found no defective or unsafe condition in or about defendant's premises nor anything that was not to the advantage of defendant". Some time had elapsed after the accident before the juror examined the premises, and it seems there was nothing seen by the juror to influence him or any of the other jurors in rendering the verdict. The unauthorized view of the premises was of a casual nature, and what the juror saw was to the defendant's advantage.

It is well settled that the refusal to grant a new trial is a matter for the discretion of the trial court, under facts such as involved in this case, and will not be reviewed upon appeal except for his abuse of that discretion: *Henry v. Postal Tele. Co.*, 100 Or. 179, 187 (197 P. 258); *Colgan v. Farmers' & Mechanics' Bank*, 59 Or. 469, 477 (106 P. 1134, 114 P. 460, 117 P. 807).

■ Where a juror makes a casual view of the premises without the fault of the prevailing party it does not require a new trial or indicate an abuse of discretion upon the part of the court to deny such new trial unless it is shown that the losing party was prejudiced thereby: *Frank v. Matthiesen,* 115 Or. 349, 354 (236 P. 754); *Lyons v. Dee,* 88 Minn. 490 (93 N. W. 899, 901); *State v. Snow,* 130 Minn. 206, 208 (153 N. W. 526). In *Frank v. Matthiesen,* supra, this court reversed the order granting a new trial. In the case at bar the trial court's ruling was that the conduct of the juror complained of was not prejudicial. We find no reason for disturbing this finding. There was no wrong intended by anyone. Not every unauthorized view of the locus in quo will require a setting aside of the verdict. Considerations of practical justice forbid it. While such unauthorized view is improper, it is not ground for a new trial unless it appears the verdict was affected thereby, or probably would be affected thereby: 20 R. C. L. 260, § 43. The affidavit of Lawrence Lister was merely hearsay statement of what was told him by the jurors. This is clearly not admissible and entirely improper, as held in *Hinkel v. Oregon Chair Co.,* 80 Or. 404, 406 (156 P. 438, 157 P. 789); *Winters v. Bisaillon,* 152 Or. 578 (54 P. (2d) 1169).

■ In *Schneider v. Moe,* 151 Or. 353 (50 P. (2d) 577), refusal of the trial court to grant a new trial was held to be an abuse of discretion. In that case it was not shown that the unauthorized view did not influence the verdict of the jury, while in the case at bar it is clearly shown that the unauthorized view of the premises by the juror Pratt had no effect upon the rendition of the verdict. In the present case, in view of the fact that an entire absence of any prejudicial effect was affirmatively shown to the trial court by the counter-

affidavits of the juror Pratt and six other jurors, it should be held, we think, that it was within the discretion of the trial court to say whether the rights of defendant were prejudiced or not.

In Iowa it is held that affirmative proof of prejudice must be shown before the trial court will be justified in granting a new trial. See *Carbon v. City of Ottumwa,* 95 Iowa 524 (64 N. W. 413, 414). It is there said:

"It should be made to appear that the misconduct prejudiced the complaining party. The circumstances disclosed should be such as to satisfy the trial court that a fair and impartial trial had not been had."

We think the defendant had a fair and impartial trial and that for an error on the part of a juror the judgment should not be set aside.

Finding no reversible error in the record the judgment of the lower court is affirmed.

RAND, BAILEY and BELT, JJ., concur.