MAYBELLE FAUBERT *vs.* SHARTENBERG'S, INC.
CHARLES FAUBERT *vs.* SAME.

NOVEMBER 26, 1937.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

FLYNN, C. J.   These are actions of the case for negligence. The plaintiff, Maybelle Faubert, seeks to recover for personal injuries sustained by her when she fell on the floor in defendant's department store, and her husband, Charles Faubert, seeks consequential damages resulting from these injuries to his wife.   Both cases were tried together in the

superior court and, at the conclusion of the evidence, the trial justice granted the defendant's motion in each case for a directed verdict in its favor. Each case is before us solely upon the plaintiff's exception to such action of the trial justice. Since the liability in both cases depends upon the liability in the wife's case, our references hereinafter to the plaintiff will refer to Maybelle Faubert.

The plaintiff testified that she entered the defendant's department store in the city of Pawtucket on October 9, 1934, about 1:30 p. m.; that she descended the stairs going into the basement, intending to have her sister-in-law, an employee of the defendant, go with her to make a purchase on the floor above the basement; that she was walking on the basement floor in an aisle, formed by counters or tables, a distance of about twelve feet from the stairs, when her right foot slipped to her right, causing her to fall heavily on her left knee; that, in trying to protect herself, she reached unsuccessfully for the table and, in falling, came down heavily upon both hands and knee; that her right leg slipped to her right and went under the table about eight inches.

She also testified that the floor felt damp and oily, and variously described it as being wet, oily, greasy and slippery, which condition of the floor caused her to fall; that there was a mark across the floor made by the inside of the sole of her right shoe; that there were no puddles of oil or grease or other substance upon the floor in localized spots, but the floor was uniformly in the same condition everywhere; that she had been in the basement three days before the accident to have her shoes tapped and heeled, and then walked over the same part of the floor as traversed on the day of the accident.

She further testified that there were no obstructions on the floor or to her vision as she walked along and that she not only could see the whole floor, but also observed it in front of her as she was walking; that her wearing apparel in-

cluded a gray swagger coat, gray dress and stockings, but that none of these articles became wet, oily or greasy from contact with the floor; that after she had fallen, an employee of the defendant told her that she, the employee, had slipped there in the morning when she came in, but had not fallen or hurt herself, but all this was denied by such employee. The plaintiff, it appears, went with her sister-in-law immediately to the lunchroom, had lunch, later went to make the purchase originally intended, and then went home. She did not testify that she washed any oil or grease from her hands before taking luncheon, although there were facilities available for that purpose.

There was other testimony that the floor was in the same condition at the time of the accident as it was earlier on that morning and on the previous Saturday, when the plaintiff had been over it; that the floor had not been oiled for at least several weeks and that it was then oiled properly in accordance with customary and approved methods; and that when properly oiled the floor would dry and be safe for traffic after fifteen to twenty-five minutes from such treatment; and that no employees or other customers fell there that day, although many traveled over the same portion of the floor.

Counsel for the plaintiff do not contend that there is any direct evidence of any improper oiling of the floor; but they rather base the plaintiff's case, as they assert specifically, upon the claim that "the defendant did not keep and maintain its basement floor in a safe condition." The sole question presented, therefore, is whether there is any evidence, considered most favorably to the plaintiff upon this motion, which required the determination by the jury of the issues of the defendant's negligence as alleged, and of the plaintiff's contributory negligence, if any.

It is now fairly established, and we have held, that it is not negligence *per se* to keep and maintain an oiled floor in a department store. Likewise, the mere falling of an invitee

upon an oiled floor of a department store is not, of itself, evidence of negligence on the part of the defendant; nor is an invitor an insurer of the safety of an invitee. Consequently, it is necessary that a plaintiff invitee, to recover, must allege and prove some specific acts of commission or omission by the defendant which amount in law to negligence, and also to satisfactorily show the plaintiff's freedom from contributory negligence. *Tenbrink* v. *F. W. Woolworth Co.*, 153 A. 245 (R. I.); *Langley* v. *F. W. Woolworth Co.*, 47 R. I. 165.

Applying the law to the facts in the instant case, the plaintiff's testimony describes the condition of the floor variously as "clean and shiny," "oily and greasy," "wet and slippery," and "damp and oily." Her entire testimony, therefore, as it relates to such condition and to her claim of the defendant's negligence, on which she relies, may be viewed most favorably to her and summarized as follows,—the floor was so "wet, oily, greasy and slippery" as to render it unsafe and dangerous. Her testimony in this regard is not corroborated directly by any other witness or by physical facts, but was substantially denied by several other witnesses. If that were all, it might be argued that the evidence nevertheless presented some conflict involving the credibility of the witnesses and the weight of the evidence; and, therefore, that it presented questions of fact for the jury to determine in the first instance, not for the court to decide upon a motion to direct a verdict.

But the plaintiff's testimony that the floor was so "wet, oily, greasy and slippery" as to be unsafe and dangerous, must be considered with certain of her other testimony, and with that of other witnesses, which is not substantially denied by her. She testified that, when she fell, she went down hard on her knee and that, in reaching for a table to break the fall, she came down hard on both hands and knee (indicating); and another witness described her, without substantial dispute, as more or less sitting down on the floor after she fell.

Her wearing apparel, she admits, included a gray swagger coat, a gray dress and stockings; but yet, significantly, none of these articles of her wearing apparel, according to her own testimony or that of other witnesses, became wet or soiled or even dampened by water, oil or grease, although they were in extensive contact with such alleged wet, oily, greasy floor.

We are at a loss to see how this floor, which did not so much as dampen or in any way soil such light colored clothing with which it came into extensive contact, can reasonably be said to be so "wet, oily, greasy and slippery" as to be unsafe and dangerous and to constitute negligence on the part of the defendant. The plaintiff's testimony, in our opinion, involves such inherent improbabilities as to become self-contradictory. The admitted physical facts and their natural effect clearly negative the other uncorroborated assertions by the plaintiff of the floor's wet, oily, greasy and unsafe condition. For the effect in principle of self-contradictory testimony and inconsistent conduct, and when uncorroborated testimony is opposed to established physical facts, see *Conaty* v. *Galkin,* 52 R. I. 410 and *Whalen* v. *Dunbar,* 44 R. I. 136.

This being so, there is no other evidence of the defendant's negligence left in the record upon which reasonable minds could differ. In our opinion, a jury could fairly come to only one conclusion on the evidence, namely, that the floor was not reasonably unsafe or dangerous, and that the defendant was not negligent in keeping and maintaining the floor in the condition in which it was that day.

The reasonably safe condition of the floor, as evidenced by physical effects, is further substantiated by the plaintiff's own testimony and conduct. She not only could see but did observe the floor, as she walked upon it, as appears from the following excerpt from the transcript. Q. "What did you do as you walked along?" A. "I looked straight forward to

where I was going." Q."Did you give any attention to the floor as you walked along?" A. "Yes, I noticed that it had been cleaned." Q. "You what?" A."I noticed that it had been cleaned." Q."And did you observe whether or not the aisle was clear or whether there were any obstructions in your way?" A. "There was nothing in my way in the aisle." Q. "And you observed that?" A. "Yes." Q. "And looked to see that?" A. "Yes." Q. "Were you looking where you were going as you walked along?" A. "Yes." Such conduct is entirely consistent with the condition of the floor as shown by the effects of physical facts and is inconsistent with the plaintiff's mere description that the floor was unsafe and dangerous.

On the other hand, the record shows that there were no attractions or distractions which engaged her attention momentarily from the floor or its condition. There were no localized spots or puddles of oil but the floor was uniformly the same. She did not rely on the assumption that it was apparently safe, only to find it unexpectedly wet, oily, slippery, and therefore unsafe. In distinguishing the instant case from another, counsel for the plaintiff admits the "obviousness of any danger as described by the plaintiff in the case at bar." Therefore, the danger, if any, as disclosed by the transcript, must be considered as obvious and actually observed by her, and the record is silent on anything which the plaintiff did for her own safety or which would excuse her contributory negligence.

We have found no case in Rhode Island actually in point. Nor do the many cases from other jurisdictions, which have been submitted to us, provide a parallel or governing case. All of them present no difficulty upon the principle and law, but contain more evidence on the issues of fact than is present in the instant case. Moreover, none of them involves the uncorroborated testimony of the plaintiff which is so inconsistent with and is contradicted by the natural physical effects from admitted facts.

Under all the circumstances presented by the record before us, we are of the opinion that there is no legal evidence of the defendant's negligence to require determination of that issue by a jury, and that the danger, if any, was obvious to and noticed by the plaintiff, who nevertheless did nothing for her own safety, and there is nothing in the evidence to excuse her lack of due care in the circumstances.

The plaintiff's exception in each case is overruled and each case is remitted to the superior court for entry of judgment on the verdict as directed.

*Hogan & Hogan, John N. Cole,* for plaintiffs.
*Sherwood & Clifford, Raymond E. Jordan,* for defendant.