JOSEPH DA ROSA *vs.* FIRST NATIONAL STORES, INC.
ALICE DA ROSA *vs.* SAME.

MARCH 14, 1939.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CONDON, J. These are actions of trespass on the case for negligence which were tried together before a justice of the superior court and a jury. At the conclusion of the evidence, a verdict was directed for the defendant in each case. The plaintiffs are now in this court on their exception to these

rulings of the trial justice. Both actions arise out of an accident to the plaintiff Alice Da Rosa in the defendant's store. Since the decision of her exception will also govern that of the plaintiff Joseph Da Rosa, her husband, we shall, in what follows, speak of these actions as one case, namely, that of the wife, Alice Da Rosa.

The only question raised by the single exception is: Did the trial justice err in granting defendant's motion to direct a verdict? The plaintiff argues that the trial justice erred because there was evidence in the record on which the jury could reasonably have found in her favor and because he weighed the evidence in deciding the defendant's motion for a directed verdict. On the other hand, the defendant contends that there was really no evidence of any negligence on its part, and therefore, that the trial justice decided correctly in directing a verdict in its favor.

It appears from the evidence that the plaintiff fell on the floor of the defendant's store in Pawtucket on the night of October 23, 1937, and, as a result of this fall, she sustained severe and painful injuries. She had gone to the store at about 8:15 or 8:20 o'clock p. m., for the purpose of purchasing some provisions at the grocery counter, which was on the left side of the store as one enters from the street. She walked safely to the counter and spent some twenty minutes there making her purchases, after which she started to leave the store, followed by an employee of the store who was carrying her bundles. When she was about two or three feet from the door and about in the center of the floor, between the grocery counter and a vegetable counter, she slipped and fell to the floor in a sitting position.

In her testimony plaintiff did not state what she slipped on, if anything, as apparently she did not know what caused her to fall. She did testify, however, that she felt as though there was something under her right foot which made her slip, and that when she put her hand on the floor to assist herself in rising, she felt something under it "that felt like

a leaf," but that she did not look at it and did not know whether it was actually a leaf. She further testified that the floor was wet and that it had been raining hard all that day.

There was also testimony for the plaintiff by a witness, Dorothy Silva, that she was in the store earlier in the day on which the plaintiff fell, at about 5:30 o'clock, p. m., and that she noticed some brown leaves on the floor near the door. Aside from this testimony and the testimony of the plaintiff, there is no direct evidence that there were leaves or a leaf on the floor when she fell in the evening, and there is no direct evidence that she slipped on a leaf. In other words, if there is any evidence at all of the plaintiff having slipped on a leaf on the wet floor, it can exist only by reason of inferences from this testimony of the plaintiff and Miss Silva.

Defendant's witness, William J. Hayhurst, the clerk who was carrying the plaintiff's bundles as she was leaving the store, testified that there were no leaves on the floor at the time of the accident. Another witness for the defendant also testified that there were no leaves or other foreign substances on the floor. The manager of the store testified that the plaintiff came to the store several weeks before trial and asked him if he knew there was something on the floor and that he said: "No"; that he had to watch the floor a "little more carefully during the rainy weather"; and that he "didn't know there was anything on the floor" on the evening of the accident. From this the defendant's counsel argues that here is corroboration of the plaintiff's lack of knowledge of anything being on the floor and that her testimony that she felt something like a leaf when she put her hand on the floor is pure conjecture.

On defendant's motion for a directed verdict, it was the duty of the trial justice to view all of this evidence most favorably to the plaintiff. It was not then within his province to pass upon the credibility of the witnesses or to weigh

their testimony. From our examination of what the trial justice said to the jury in directing them to give their verdict for the defendant, it appears to us that the trial justice properly performed his duty, at least as to that part of the evidence on which plaintiff relied to prove that her fall was caused by slipping on a leaf on the wet floor. The trial justice said: "There is nothing in that testimony which shows, and this is all the testimony this woman gave on the question of how she fell, there is nothing that shows she slipped and fell on a leaf. By guesswork we might assume that that was so, but under the law neither the Court nor the jury has a right to guess." In other words, he took the view that there is no evidence on which the jury could find for the plaintiff, because there is no evidence in support of her allegation, as more specifically set out in her bill of particulars, that she slipped on wet leaves or a foreign substance, causing her to fall.

The plaintiff objects to this part of the trial justice's decision, on the ground that on all the evidence the jury could reasonably have inferred that the leaves, which Miss Silva saw on the floor at 5:30 o'clock in the afternoon, were still there at 8:20 o'clock in the evening, when the plaintiff entered the store and that, twenty minutes thereafter, plaintiff slipped on them when she was leaving the store. Pursuing this line of reasoning, she claims that the instant case calls for the application of the following principle as laid down in *Vrooman* v. *The Shepard Co.,* 57 R. I. 445: "While it is not possible to rest a case upon mere speculation, yet the plaintiff is not required, in *all* cases, to produce positive and direct evidence of an eyewitness to the alleged negligence. Its negligence may be established by indirect and circumstantial evidence, and by sufficient proof of other facts and circumstances from which such negligence may be fairly and reasonably inferred. Proper inferences from other proven facts, when considered in connection with all of the evidence, may satisfy reasonable minds that they lead to a

logical conclusion that the injury resulted from the defendant's negligent acts, and they are for the jury to determine."

In that case the plaintiff proved by direct evidence that her injury was caused by the closing of a heavy outside casing door of an elevator on her shoulder while she was in the act of entering the elevator at the invitation of the defendant's employee. There was no evidence as to what caused the door to close. It was admitted by the defendant that the elevator was under the exclusive control of its employee and that the opening and closing of the door was by manual operation. The defendant's employees, the elevator operator and the elevator starter, both denied closing the door on the plaintiff. On these facts the trial justice found that the accident was unexplained, as to defendant's negligence, and he directed a verdict for the defendant. This was held by us to be error, because, on the principle above stated, there were sufficient facts established by direct evidence from which the jury could reasonably have inferred that the defendant's employee closed the door while the plaintiff was in the act of entering the elevator.

Obviously these facts differ widely from those in evidence in the instant case. Here there is no direct evidence of the cause of plaintiff's fall. She testified that her foot slipped but she cannot say what she slipped on. There is no direct evidence of any foreign substance on the floor at the time of the accident or of any condition of the floor that might have caused her to slip. In other words, there is a clear lack of any such direct evidence as was presented in the *Vrooman* case, *supra,* which would enable the jury reasonably to infer that the accident was caused by the negligence of the defendant.

But the plaintiff contends that there is direct evidence of a condition of the floor at the spot where the plaintiff fell which warrants an inference that the plaintiff's fall was due to the defendant's negligence. She rests this contention upon her own testimony that, when she put her hand on the

floor to rise, she felt something which felt like a leaf, and on the testimony of Miss Silva, who saw wet leaves on the floor at 5:30 p. m. From this testimony the plaintiff argues that a reasonable inference may be drawn that these leaves were still on the floor later in the evening, at 8:20 o'clock, and that it was such a wet leaf which caused her to fall and which she must have felt when she placed her hand on the floor. In support of her contention that there is evidence which requires the submission of her case to a jury, she relies on the following cases: *Langley* v. *F. W. Woolworth Co.*, 47 R. I. 165; *Saunders* v. *Williams & Co.*, 155 Ore. 1, 62 Pac. (2d) 260; *White* v. *Mugar*, 280 Mass. 73, 181 N. E. 725; *McNeil* v. *Brown & Co.*, 22 Fed. (2d) 675; *Great Atlantic & Pacific Tea Co.* v. *Weber*, 51 Fed. (2d) 1051. An examination of these cases will show that none of them presents such a lack of direct evidence from which to infer the cause of the plaintiff's fall as is presented by the instant case.

In the *Langley* case there was direct evidence of the presence of peanuts and peanut shells scattered and crushed on the floor near the counter where the plaintiff fell, and also there was evidence of a "mark" among the shells where the plaintiff had slipped. There was thus a reasonable and substantial basis for an inference as to what caused the plaintiff to fall. Proof of that fact did not rest on mere surmise or conjecture. The real controversy in the case arose in fact over whether those peanuts were the same peanuts which had been seen by a witness an hour before the plaintiff fell. If they were the same, then their presence for such a length of time was notice to the defendant of the dangerous condition of the floor. This court properly held that, with direct evidence of crushed peanuts on the floor, which it could be inferred caused the plaintiff to slip and fall, it was proper to leave to the jury the question whether they were the same peanuts seen on the floor earlier in the day, because an inference that they were the same would not be unreasonable.

In support of her contention that her testimony, that she felt something underneath her hand that felt like a leaf, is evidence of a leaf on the floor where she fell, either directly or, at least by way of inference, plaintiff relies strongly on certain language in *Saunders* v. *Williams & Co., supra.* There the Oregon supreme court said: "It was not absolutely necessary for plaintiff to testify that she saw oil on the floor where she slipped. The fact that the witness testified that it felt like oil is no reason for rejecting her statement of the fact that it was oil upon which she slipped." An examination of the report of that case discloses that the plaintiff, not once but several times, testified that she slipped on oil; also that the court found that: "The testimony tended to show that the store was regularly oiled and that the place where plaintiff slipped was colored differently from the other part of the floor." Also "that defendant's floors were kept oiled and showed oil spots all over the floor." In the light of such testimony, it is not difficult to say that the plaintiff there presented substantial evidence of a direct kind that the floor was oiled, that the spot on which she slipped was oily and that the cause of her fall was that oily spot. Naturally, in the face of such evidence, the court declined to reject plaintiff's statement that she slipped on oil merely because, at one point in her testimony, she said it felt like oil.

*White* v. *Mugar, supra,* is, if anything, less in point on the state of the evidence. There the plaintiff stated that she fell from slipping upon vegetable leaves lying on the floor of defendant's market. Her son saw vegetable leaves strewn along the floor in front of the vegetable counter about an hour before plaintiff entered the market. At a quarter before one he met his mother in front of the market as she was going in. About five minutes later she came out crying and walking with difficulty and said to him that she had slipped on some vegetable leaves. After helping his mother into an automobile, the son then stepped back into the market

to get her bundle and again noticed vegetable leaves on the floor where his mother had slipped, in about the same condition as he had an hour or so previously. The mere statement of this set of facts is sufficient to differentiate it markedly from the instant case. Indeed the question in the *White* case as in *Langley* v. *F. W. Woolworth Co., supra,* which was most controverted, seems to have been, not what caused the plaintiff to fall, but whether the vegetable leaves on which she fell were the same that her son had seen on the floor an hour before and whether they were there a sufficient length of time to charge the defendant with notice of the dangerous condition which they created. The Massachusetts supreme court said the facts before it resembled those in *Anjou* v. *Boston Elevated Railway,* 208 Mass. 273, and that case was also cited by our court in the *Langley* case.

The facts in *McNeil* v. *Brown & Co., supra,* are equally variant from those in the case at bar. There the plaintiff's right foot suddenly slipped, causing her to fall near the end of a counter on something like oil. She was assisted to a chair nearby and then saw the mark of her foot in a hollow place in the floor where there was oil. She pointed out this oil spot to the defendant's manager and also to her sister-in-law, who came to her shortly after the accident. It was admitted by the defendant that the floors were oiled "once in so often"; that they were swept at night and oil occasionally applied; that after this work was done it was not inspected very often; and that it was not inspected when done the night before the accident in question.

In *Great Atlantic & Pacific Tea Co.* v. *Weber, supra,* the plaintiff fell on the floor in a puddle of water, which had dripped from a counter where the plaintiff had gone to purchase some lettuce. There was evidence that the floor had been recently oiled; that water dripped to the floor from the counter where the lettuce was displayed; that the water accumulated on the floor and made the floor slippery; and that because of such condition the floor had to be mopped. In

that case apparently no question was raised as to the cause of the plaintiff's fall, as the evidence was clear that her foot slipped in the very spot where the water had accumulated on the oily floor and that she fell in the puddle of water.

The case at bar is thus like none of the above-cited cases but is, while not identical, much more nearly like *Faubert* v. *Shartenberg's, Inc.*, 59 R. I. 278, 195 A. 218; *Ziegler* v. *Providence Biltmore Hotel Co.*, 59 R. I. 326, 195 A. 397 and *Wyzga* v. *David Harley Co.*, 60 R. I. 480, 199 A. 452. In each of these cases there was a failure on the part of the plaintiff to offer direct evidence of what caused her to fall or evidence from which the jury could reasonably have inferred the cause of her fall. This essential element of the plaintiff's case in each of these instances remained, after all the evidence was in, a matter of conjecture or speculation which we held should not be left to the jury.

In the instant case the cause of Mrs. Da Rosa's fall is also a matter of speculation. She does not tell us on what her foot slipped or why it slipped; she does not testify as to any dangerous condition of the floor where she was standing at the time she slipped and fell; and she does not testify that there was a leaf or leaves on the floor at that spot. Her testimony, that when she was rising, she felt something with her hand that felt like a leaf, is of no value. It is not like testimony that a spot on the floor "felt like oil". Such testimony is directed at a condition of the floor that is subject in some degree to identification by the sense of touch without the aid of the sense of sight. The same cannot be said of a leaf.

On the whole, we are of the opinion that there was no evidence of any leaf or leaves at the spot on the floor where plaintiff's foot slipped, and therefore we cannot infer that a wet leaf on the floor was the cause of the plaintiff's fall. The fact that wet leaves were seen, by Miss Silva, on the floor near the vegetable counter about three hours before the accident, does not warrant the inference that the same leaves

were there when the plaintiff fell and that her foot slipped on one of them.  It seems to us, if any leaves were on the floor, plaintiff would have seen them and also that she would have seen whether or not what she felt under her hand when she was rising from the floor was actually a leaf.  But even if we assume that the leaves which Miss Silva saw on the floor at 5:30 p. m. were still on the floor at the time the plaintiff fell, it still remains a matter of conjecture whether her foot slipped on a leaf.  From the direct evidence of leaves on the floor at 5:30 p. m., it is impossible to rest the immediate inference that the plaintiff fell on one of those leaves.  It is necessary first to infer that those leaves remained on the floor and that one of them was in the exact spot where her foot slipped.  Upon these two inferences would be superimposed the ultimate inference that Mrs. Da Rosa slipped on the leaf that was in that spot.  A jury is not permitted to indulge in such a series of inferences with only remote direct evidence upon which to support it.  This goes beyond the bounds of inference and enters the realm of speculation.  There is no error in the decision of the trial justice.

The plaintiff's exception in each case is overruled, and each case is remitted to the superior court for entry of judgment on the verdict as directed.

*Peter W. McKiernan, McKiernan, McElroy & Going, William E. Walsh, Curry & Walsh,* for plaintiffs.

*Henry M. Boss,* for defendant.