[Civ. No. 13230.   Second Dist., Div. One.   Apr. 24, 1942.]

MARGARET LORENZ, Respondent, v. SANTA MONICA CITY HIGH SCHOOL DISTRICT et al., Appellants.

Tripp, Penney & Callaway for Appellants.

Keane & Collins and Betts & Garrison for Respondent.

YORK, P. J.—Respondent brought the instant action for damages on account of personal injuries sustained by her when she slipped and fell on the floor of a foyer leading to a school auditorium where she went to attend the second of a series of educational lectures being conducted by appellant school districts under the sponsorship of the Santa Monica Council of Parent-Teachers.

This appeal is prosecuted from the judgment entered pursuant to the verdict of the jury in favor of respondent, upon the following grounds:

1. The evidence fails to establish any negligence on the part of appellants;

2. There is a fatal variance between the claim filed with the appellants, the allegations of the complaint and the evidence adduced at the trial;

3. The court erred in refusing to give certain instructions requested by appellants.

4. The court erred in denying appellants' motion for nonsuit.

On the evening of September 26, 1939, the respondent, a woman sixty-six years of age, entered the foyer of the auditorium of the Lincoln Junior High School at Santa Monica on her way to attend the lecture above referred to, it being her first visit to the school auditorium. In order to gain access to the auditorium by the use of the main entrance to the building, it was necessary to pass through the double doors of said

main entrance, proceed across the concrete floor of the foyer and then into the auditorium through an inner doorway. Respondent, accompanied by two other women, stepped through the main entrance into the foyer with her left foot, and as she brought her right foot forward, she slipped and fell to the floor, sustaining a broken hip, technically described as a "transverse fracture of the cervical neck of the right femur . . . comminuted fracture, impacted, jammed and fixed." Respondent testified that while lying on the floor after she fell she noticed for the first time that the floor was very "slippery"; had a very "shiny" appearance.

Mrs. Moffit, president of the Santa Monica Council of Parent-Teachers, testified she had observed the floor in the foyer a week previous to the night in question and found it to be very dull and dusty, whereas on the night of the accident it was very shiny and slick and that "I slipped slightly, but I caught myself and I slipped more than once."

Mrs. Drake, chairman of the mental and social hygiene section of the Parent-Teachers' Association, testified with respect to the condition of the floor on the night of September 26, 1939, that "it was very much cleaned up and waxed and very slick"; that other people beside respondent slipped on the floor that evening. This witness also testified that this floor was very dirty and dusty the week before and that she complained to a Mr. Graybill regarding such condition, and that it appeared to her that the floor had been waxed between the night of the first lecture and the night of the accident in question.

Mrs. Bangs, who entered the foyer just ahead of respondent, testified that she slipped when she got inside the entrance; that she did not fall, but was very badly overbalanced; that she looked at the floor and found "a film or a slippery surface—very slippery"; that she assumed the floor had been waxed, as it was very shiny and slippery.

Mrs. Burness, co-chairman with Mrs. Drake of the lecture series, testified that she was in and out of the foyer during the evening; that she did not walk across the foyer, having entered through the east door instead of the main entrance; that she was stationed just inside the door of the auditorium distributing pamphlets; that she observed the floor in the foyer and it looked "slippery" and she saw skid marks on it, a heel mark about a foot or more long; that the floor looked as

though it had been polished because of its high gloss; that she had waxed floors in her home and could tell when she looked at the floor in the foyer that it had been waxed.

Mrs. McIlvaine testified she observed the floor in the foyer on the evening in question and that it was "slick and shiny"; that the floor was dusty and dirty the week before; that it did not appear to be waxed at that time because it was not slippery to her feet.

The school employees testified that a wax preparation was last applied to the floor of the foyer on September 6, 1939; the floor was first scrubbed with hot water and liquid soap, rinsed with fresh water and allowed to dry; that one part wax was mixed with two parts of water; that a mop was dipped in the mixture, squeezed dry and applied to the floor. It was stipulated that the preparation used was known as Turco X'ol, and that the floor of the foyer was a painted concrete floor.

Jacob C. Eymann, who was called as an expert, in answer to a question put to him by counsel for appellants, to wit: "I just want you to tell me what the difference in the surface would be after the wax was applied when you put it on a linoleum floor and on a concrete floor?" testified as follows: "On a linoleum floor, being it is porous, we apply the wax and burnish it into the linoleum in order not to lay on the surface. On the painted floor the surface is all sealed with paint and therefore the wax lays on the surface." This witness was asked by counsel for respondent: "What is the difference, Mr. Eymann, in the waxing of a porous floor and the waxing of a painted concrete floor? A. On a porous floor your wax naturally goes into the pores of the floor; whereas, on the painted floor it lies on top. Q. What is the effect of that? What happens to the wax on the concrete floor? A. It makes it slippery on a painted floor. Q. How do you explain that? What actually happens to the wax itself? A. The wax lays on top of a painted floor, on the surface of it, and just creates a film there, or lies there in a film and just makes it slippery." Said witness was then asked: "In your opinion is it an improper practice to wax a painted concrete floor?" to which he replied: "Definitely so." However, such answer was stricken and the court sustained appellants' objection thereto on the ground that it was not "a subject for expert testimony at best."

Philip Perrault, also called as an expert, testified: "And

the difference with concrete painted, the concrete wax floor compared with other floors is the concrete being painted and sealed, the wax stays on the surface. The floor will look just as nice as a waxed and polished linoleum floor, but the difference is that the wax remains on the surface and causes the floor to be slippery and that is why I do not recommend it. . . . Q. What we want to know is what is the practical effect of applying wax on the one hand to concrete floors and on the other hand to linoleum and hardwood. Just tell us what happens to the wax and why? A. Well, the hardwood and concrete, the wax does not penetrate as it does on linoleum, especially if both the concrete and the wood has a varnish or painted finish . . . Q. (On cross-examination.) So actually there is just as much adherence to the surface of the floor in painted concrete as there is in linoleum or hardwood, is there not? A. No, there is not. Linoleum is softer where concrete is hard and brittle. . . . Q. I understood you on your direct testimony to say that the reason for the fact that the painted concrete surface was less abrasive than the hardwood or the linoleum, was because of the fact that the wax went down into the pores and hence adhered more to such a surface, is that right? A. Yes, that is true.'' On redirect examination, this witness was asked: ''What is the nature of the surface, Mr. Perrault, of concrete, as compared with linoleum?'' His reply follows: ''Well, the difference is that the wax remains on the surface, whereas on linoleum there would be such a small amount of film on the surface that you would not get the wear that you would on the harder surface . . . On the concrete or other sealed or hard surfaced floors, you would not get as much traction as you would on linoleum.''

It is shown by the testimony of the superintendent of maintenance for the school that the said foyer floor had been waxed for a period of six or seven years prior to the accident; that he had never heard of anyone slipping on said floor during this time. This witness also testified that from the 11th of September to the date of the accident, he estimated that at least 15,000 children passed up and down the foyer on their way to the auditorium. However, this witness also testified that the school children passing through the foyer did not use the main entrance (just inside of which the accident here occurred), but used the east door, and that

the main entrance was kept locked during the week. In answer to the question "When children come in the side entrance and walk into the auditorium through these doors (referring to the side entrance) they have no occasion to walk over here in front of this door (the main entrance) do they?" this witness replied: "Not directly through it, but in passing they crowd close to the door when they walk through there, but they do not walk through the door."

In connection with their contention that the evidence (of which the above recital is a brief résumé) fails to establish any negligence on their part, appellants present for determination the question, "Is it negligence merely to wax a floor" using a properly prepared and applied wax mixture? and cite many cases from foreign jurisdictions, among which appear the cases of *Bonawitt* v. *Sisters of Charity of St. Vincent's Hosp.*, 43 Ohio App. 347 [182 N. E. 661], and *Smith* v. *Union & New Haven Trust Co.*, 121 Conn. 369 [185 Atl. 81]. Respondent counters with the statement: "The principal issue in the instant case was whether or not it was proper to apply wax *of any kind* to the *particular type of floor* in question."

▋ Appellants' contention is apparently disposed of by the following language appearing in the case of *Nicola* v. *P. G. & E.*, 50 Cal. App. (2d) 612, 615 [123 P. (2d) 529], recently decided by Division Three of this court:

"Appellants' argument goes further to assail the finding that the floor was maintained by defendants in a negligent manner, and they rely upon a rule, which has been followed by some courts in other jurisdictions, that the duty of an owner to exercise ordinary care is not violated by merely oiling or waxing and polishing a floor in the usual way although the floor is rendered slippery thereby. (*Bonawitt* v. *Sisters of Charity of St. Vincent's Hospital*, (1932) 43 Ohio App. 347 [182 N. E. 661]; *Smith* v. *Union & New Haven Trust Co.*, (1936) 121 Conn. 369 [185 Atl. 81].) This is contrary to the settled law as announced by our own court:

"In *Rothschild* v. *Fourth & Market St. R. Co.*, (1934) 139 Cal. App. 625, 628 [34 P. (2d) 734], it was held that evidence that a floor of a hallway maintained by the owner of a building for use by invitees of tenants of the building had been rendered slippery by the application of wax was sufficient to support a finding of negligence. This decision was

in accord with those in *Williamson* v. *Hardy*, (1920) 47 Cal. App. 377 [190 Pac. 646]; *Lamb* v. *Purity Stores, Inc.*, (1932) 119 Cal. App. 690 [7 P. (2d) 197]; *Brinkworth* v *Sam Seelig Co.*, (1921) 51 Cal. App. 668 [197 Pac. 427]; and *Brown* v. *Holzwasser, Inc.*, (1930) 108 Cal. App. 483 [291 Pac. 661]. It has been followed in principle in *Winsby* v. *Kertell*, (1935) 10 Cal. App. (2d) 61 [50 P. (2d) 1075]; *De Verdi* v. *Weiss*, (1936) 16 Cal. App. (2d) 439 [60 P. (2d) 879]; *Tuttle* v. *Crawford*, (1936) 8 Cal. (2d) 126 [63 P. (2d) 1128]; and *Stoddard* v. *Roberts Public Markets, Inc.*, (1938) 27 Cal. App. (2d) 166 [80 P. (2d) 519]. The right of a proprietor of a place of business to wax a floor which the customers are expected to use is not one which upon any reasonable theory can be held to be superior to his duty to use ordinary prudence and caution to avoid injury to those who come to his premises by invitation. ▉ If wax or, as in the present case, both wax and soft soap, are applied to the floor, it must be in such manner as to afford reasonably safe conditions for the proprietor's invitees, and if such compounds cannot be used on a particular type of floor material without violation of the duty to exercise ordinary care for the safety of invitees, by reason of the dangerous conditions they create, they should not be used at all. Of course slipperiness is an elastic term. From the fact that a floor is slippery it does not necessarily result that it is dangerous to walk upon. It is the degree of slipperiness that determines whether the condition is reasonably safe. This is a question of fact. The trial judge could well have believed from the evidence that the surface of the floor was sufficiently hard and smooth to become unsafe with the application of wax or soft soap and water as they were used by appellants. In fact, if full credence was given to the testimony of plaintiff and her witnesses, and if it was believed that they had slipped and in some instances had fallen while walking across the floor in a careful manner, the trial judge could scarcely have believed that the floor was maintained in a wholly safe condition. And if the condition was as described by these witnesses, it was for the trial judge to determine, as a fact, whether the condition was one which afforded reasonable safety to the defendants' patrons or, in other words, whether defendants had exercised ordinary care with respect to the condition of the floor. Perhaps it would have been an entirely justifiable conclusion that the floor, although slippery, was reasonably

safe for public use or that defendants used ordinary care with respect to its condition, but those questions of fact have been decided to the contrary upon substantial evidence, and we could not, even if we were so inclined, substitute our judgment for that of the trial judge. (See cases cited above.)'' (See, also, *Hatfield* v. *Levy Bros.*, 18 Cal. (2d) 798 [117 P. (2d) 841].)

Likewise in the instant case, the jury decided these questions of fact against appellants' contentions upon substantial evidence.

As to appellants' claim that there was a fatal variance between the claim, the allegations of the complaint and the evidence, respondent's action is based upon section 2.801 of the School Code fixing liability of school boards for injuries arising out of the negligence of their officers or employees, providing that claim for damages shall have been presented within ninety days after the accident occurred specifying the ''name and address of the claimant, the date and place of the accident and the extent of the injuries or damages received.''

The claim (a copy of which is attached to the complaint, made a part thereof and ''marked 'Exhibit A' with the same force and effect as if fully set forth herein'') was filed with the proper officer on account of personal injuries sustained by respondent through the claimed negligence of appellants ''in negligently and carelessly failing to properly inspect, and negligently and carelessly owning, maintaining and permitting to exist a dangerous and defective condition in said auditorium, in that the floor at the main entrance thereof was so highly waxed and polished as to cause the claimant, immediately upon entering said auditorium to slip and fall,'' etc.

The complaint alleged that appellants ''owned, operated and maintained the auditorium of the said Lincoln Junior High School in such a careless and negligent manner that they carelessly and negligently caused or carelessly and negligently permitted the concrete floor in the main entrance of said auditorium to be so highly waxed and polished that it was, at said time and place, extremely slippery; that by reason of the extremely slippery condition of said floor, plaintiff, immediately upon entering the said auditorium and stepping upon said floor, slipped and fell thereon receiving serious personal injuries.''

The evidence produced tended not only to prove that the

floor was so highly waxed and polished as to render it slippery, but that said floor was maintained in so dangerous and defective a condition that appellants' failure to properly inspect it could very readily be inferred therefrom.

The fact that a copy of the claim was attached to the complaint and admitted in appellants' answer, as well as appellants' failure to object to the introduction of evidence at the trial upon the stated ground of variance, point to the conclusion that appellants were not misled, and "a variance to be fatal must have misled or served to mislead the adverse party." (*Short* v. *Orland etc. Co.,* 29 Cal. App. (2d) 326, 329 [84 P. (2d) 324], citing *Holden* v. *Mensinger,* 175 Cal. 300 [165 Pac. 950].) Further, the fact that appellants introduced evidence controverting the claims of respondent, in part at least, and succeeded in obtaining a judgment substantially less than claimed is sufficient to show that appellants were not taken unawares.

Appellants complain of error committed by the trial court's refusal to give five instructions requested by them. The first three of these are disposed of by the discussion in this opinion of appellants' question: "Is it negligence merely to wax a floor" using properly prepared and applied wax mixture?

The fourth instruction which the court refused to give reads as follows: "The owner of premises cannot be guilty of negligence where he does not know of any unreasonably dangerous condition thereon, and if he is not charged with such knowledge as an ordinary reasonable person. Unless you find by a preponderance of the evidence, therefore, not only that there was here such a dangerous condition as to create an unreasonable danger of bodily injury, but also that the defendant actually knew or as an ordinary reasonable person should have known that there was an unreasonable danger to persons using due care for their own safety, then you must find in favor of the defendants and against the plaintiff."

There was no dispute that the slippery condition of the floor had been created by appellants or their employees, acting within the scope of their employment. This being so, knowledge of the condition was imputed to the appellants as a matter of law This rule of law is set out in the recent case of *Hatfield* v. *Levy Bros., supra,* page 806, in the following words: "Where the dangerous or defective condition of

the property which causes the injury has been created by reason of the negligence of the owner of the property or his employee acting within the scope of the employment, the owner of the property cannot be permitted to assert that he had no notice or knowledge of the defective or dangerous condition in an action by an invitee for injuries suffered by reason of the dangerous condition. Under such circumstances knowledge thereof is imputed to him. (*Saunders* v. *A. M. Williams & Co.*, 155 Ore. 1 [62 P. (2d) 260].) Where the dangerous condition is brought about by natural wear and tear, or third persons, or acts of God or by other causes which are not due to the negligence of the owner, or his employees, then to impose liability the owner must have either actual or constructive knowledge of the dangerous condition or have been able by the exercise of ordinary care to discover the condition, which if known to him, he should realize as involving an unreasonable risk to invitees on his premises. His negligence in such cases is founded upon his failure to exercise ordinary care in remedying the defect after he has discovered it or as a man of ordinary prudence should have discovered it.''

The fifth instruction refused by the court involved the issue of contributory negligence. In addition to several special instructions, the court gave a general instruction defining the meaning of "contributory negligence" and explaining the rule applicable thereto. An examination of the instructions given by the court reveals that the jury was fully and impartially instructed on all questions of law appertaining to the issues presented by the evidence and the pleadings in the instant cause, and that no error was committed by the trial court in refusing to give the requested instructions hereinbefore referred to.

The court did not err in denying appellants' motion for a nonsuit. There is sufficient substantial evidence in the record to support the jury's finding of negligence on the part of appellants, as well as its implied finding that there was no contributory negligence on the part of respondent.

For the reasons stated, the judgment appealed from is affirmed.

Doran, J., and White, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied June 22, 1942.