[Civ. No. 16033. Second Dist., Div. Three. Apr. 27, 1948.]

SAMUEL MOORE OLDHAM, Appellant, v. THE ATCHI-
SON, TOPEKA & SANTA FE RAILWAY COMPANY
(a Corporation) et al., Defendants; UNITED STATES
GYPSUM COMPANY (a Corporation), Respondent.

Hildebrand, Bills & McLeod and D. W. Brobst for Appellant.

Lyndol L. Young for Respondent.

VALLEE, J. pro tem.—Appeal by plaintiff from a judgment for defendants, The Atchison, Topeka & Santa Fe Railway Company (referred to as "Santa Fe"), and United States Gypsum Company (referred to as "Gypsum Company"), entered upon the granting of their respective motions for a judgment of nonsuit in an action for damages for personal injuries. Plaintiff has dismissed his appeal from the judgment in favor of the Santa Fe.

Viewing the evidence in the light most favorable to the plaintiff, indulging in all reasonable inferences in his favor and disregarding all conflicting and contradictory evidence, the facts are these: The accident occurred on February 25, 1945, at about 6:30 a. m., as plaintiff, a conductor, stepped off a freight train, causing him to slip and sustain the injuries complained of. The Gypsum Company maintains a large plant at Midland, California, where it manufactures gypsum plaster, fertilizer and plasterboard. One part of its plant is known as the board plant. It maintains a number of spur tracks at its plant and on its property. The accident occurred in front of door No. 37 of the board plant of the Gypsum Company and opposite its spur track No. 3. Spur track No. 3 runs in a southeasterly direction from the main line of the Santa Fe and between the Gypsum Company's board plant (which is immediately adjacent to track No. 3 to the east) and its warehouse and mill (which is immediately adjacent to track No. 3 to the west). Boxcars are "spotted" for load-

ing and unloading on spur track No. 3. The floor of the board plant building is set level with the floors of "spotted" boxcars. Door No. 37 is located "about twenty-two feet north of the south end of the board plant." When boxcars are loaded a ramp is placed from the floor of the building into the boxcars. Between track No. 3 and the outer wall of the board plant there is a pathway about 3½ feet wide. The ground slants downward from the board plant building to the tracks. Freight cars are brought in and out of the Gypsum Company plant every night on the spur tracks by employees of the Santa Fe. On the morning of the accident the Santa Fe was engaged in taking loaded cars from, and in "spotting" empty cars in, the Gypsum Company plant. . .

At the time of the accident, plaintiff, an employee of the Santa Fe, was engaged in "spotting" 13 freight cars on spur track No. 3 in front of the board plant of the Gypsum Company. The 13 cars were being shoved by an engine in a southerly direction. The train originated at Blythe, California, and left there some time before midnight of February 24, 1945. It arrived at Midland shortly after midnight. At the time of the accident it "was just breaking day. It wasn't quite light to work without lamp signals." There were no lights alongside the board plant building. Plaintiff was on the "lead" car—the farthest from the engine—going southerly on track No. 3. He was on the side of the car next to the board plant. The train was going "four to six miles an hour." It was plaintiff's duty to spot the door of freight car 6 opposite door No. 37 of the board plant so that the car could be loaded right out of the plant. To do so, it was his duty to get off the lead car in the space between the board plant building and the tracks as the lead car passed door No. 37, stand there, and when the sixth car from the engine was opposite door No. 37, give the proper signal to stop the train. Upon reaching door No. 37 plaintiff turned his hand loose from the grab irons of the car to step off. He noticed that he was hitting a piece of plasterboard in the pathway between the board plant and the tracks, but he had released himself from the side of the car so far that he could not regain his hold and he stepped on the piece of plasterboard. He stumbled over some timbers and pieces of plasterboard and rubbish that lay between the tracks and the board plant. His foot slipped and he was thrown against the board plant building. When he hit the building he was thrown back against a moving car which knocked him to the ground. The

heel of his right foot caught under a wheel of the boxcar. He was rendered unconscious and sustained severe injuries.

Plasterboard is very slick and slippery and of the same general color as the ground between the board plant and the tracks. The loading, unloading and cleaning of freight cars at the Gypsum Company plant was done exclusively by employees of the Gypsum Company. The Gypsum Company maintained a clean-up crew for the purpose of cleaning around the tracks and the yard and, in addition, one man was assigned the particular duty of cleaning the board plant warehouse and adjacent tracks. These men worked the same shifts as the loading crews and they all ceased work at 3:30 every afternoon. It was the duty of the clean-up crew to daily clean the tracks on the Gypsum Company property, including track No. 3.

 The rules governing our review of the evidence upon an appeal from a judgment of nonsuit are stated in *Bosqui* v. *City of San Bernardino,* 2 Cal.2d 747, 760 [43 P.2d 547], as follows: " 'Every favorable inference fairly deducible and every favorable presumption fairly arising from the evidence adduced must be considered as facts proved in favor of the plaintiffs. Where evidence is fairly susceptible of two constructions, or if one of several inferences may reasonably be made, the court must take the view most favorable to plaintiffs. If contrary evidence has been given it must be disregarded. (*Estate of Arnold,* 147 Cal. 583 [82 P. 252].) The plaintiff must also be given the benefit of every piece of evidence which tends to sustain his averments, and such evidence must be weighed in the light most favorable to plaintiff's claim. (*Anderson* v. *Wickliffe,* 178 Cal. 120 [172 P. 381].) Evidence, whether erroneously admitted or not, if relevant to the issues joined, must be given the credit and benefit of its full probative strength, and any question arising from the fact of variation between the evidence of the witnesses cannot be raised or considered. The evidence must be taken most strongly against the defendant, and if the plaintiff has introduced proof sufficient to make out a *prima facie* case under the allegations of his complaint the motion, if made upon the close of the case, should be denied.' " Ordinarily the question of negligence is for the jury. Under the evidence we have recited, we are of the opinion that the question should have been submitted to the jury.

█ Appellant was a business invitee of the Gypsum Company, working on its premises for its benefit, and it was its duty to use ordinary care to furnish him a safe place within which to work. The Gypsum Company's duty in this behalf is stated in *Miller* v. *Pacific Constructors, Inc.*, 68 Cal. App.2d 529, 545 [157 P.2d 57]: "The general rule in that regard is that an owner or occupier of premises, who, by invitation express or implied, whether the invitation is pursuant to a written contract or otherwise, induces, or knowingly permits, a workman to enter the premises for the performance of duties mutually beneficial to both parties is required to use reasonable care to protect the workman by supplying him with a reasonably safe place in which to work and to furnish and maintain appliances in connection therewith which are reasonably safe for the purposes embraced therein. (*Mayes* v. *Splitdorf Electrical Co.*, 94 N.J.L. 460 [111 A. 10]." (See, also, *Hinds* v. *Wheadon*, 19 Cal.2d 458, 460 [121 P.2d 724]; *Edwards* v. *Hollywood Canteen*, 27 Cal.2d 802, 809 [167 P.2d 729]; Rest. Torts, §§ 332, 343.)

From the evidence that the premises where the accident occurred and the material which caused the accident were all in the exclusive management and control of the Gypsum Company, and that the loading, unloading, and cleaning of the freight cars and the tracks and the pathway between the tracks and the board plant building was done exclusively by employees of the Gypsum Company, the jury reasonably could have inferred from the presence of plaster board and other debris in the pathway (1) that the Gypsum Company failed in its duty to properly clean the space between the tracks and the board plant building where trainmen were required to work in their regular switching duties in the plant, (2) that the plaster board and other debris had been negligently placed and left there by no persons other than employees of the Gypsum Company, (3) that it did not use ordinary care to furnish appellant a reasonably safe place within which to work, and (4) that the Gypsum Company's negligence in that respect was the proximate cause of the injuries sustained by the plaintiff.

█ Respondent urges that in the absence of evidence that it had actual or constructive notice of the condition of the pathway, appellant failed to make out a prima facie case. The contention is devoid of merit. Where the evidence shows, as it does in this case, that the condition which caused the injury was created by the employees of the respondent, or

the evidence is such that a reasonable inference can be drawn that the condition was created by employees of the respondent, then respondent is charged with notice of the dangerous condition. The rule is stated in *Hatfield* v. *Levy Brothers,* 18 Cal.2d 798, 806 [117 P.2d 841]: "Where the dangerous or defective condition of the property which causes the injury has been created by reason of the negligence of the owner of the property or his employee acting within the scope of the employment, the owner of the property cannot be permitted to assert that he had no notice or knowledge of the defective or dangerous condition in an action by an invitee for injuries suffered by reason of the dangerous condition. Under such circumstances knowledge thereof is imputed to him. (*Saunders* v. *A. M. Williams & Co.,* 155 Ore. 1 [62 P.2d 260].)" (See, also, *Lorenz* v. *Santa Monica etc. Sch. District,* 51 Cal. App.2d 393, 401 [124 P.2d 846].)

In our opinion there is evidence of sufficient substantiality to support a verdict in favor of appellant.

Judgment reversed.

Shinn, Acting P. J., and Wood, J., concurred.