[Civ. No. 14885.   First Dist., Div. Two.   Mar. 26, 1952.]

HARVEY CALAME, Respondent, v. H. L. STEVENS, Appellant.

Campbell, Hayes & Custer and Austen D. Warburton for Appellant.

Smith, Wool & Perren, Vernon E. Perren and Robert L. Crane for Respondent.

JONES, J. pro tem.—This appeal is from a judgment in favor of plaintiff on account of personal injuries suffered when he fell from a metal framework over the entrance to defendant's used car lot in San Jose.  The case was tried by the court sitting without a jury.

The framework from which plaintiff fell was made of iron pipes 2 or 2½ inches in diameter.  An upright pipe stood on each side of the entrance to the lot extending upward 10 to 12 feet.  These uprights were connected at the top by a hori-

zontal pipe of the same size. The two gates of the entrance hinged on the uprights, and a wire fence extended from each upright in either direction.

The defendant undertook to extend this framework upward by constructing a superstructure for hanging a display sign. Pieces of pipe of the same diameter, about 2½ feet long, were coupled on to the existing uprights. This work was done by two of the defendant's employees. These men were busy trying to fasten the horizontal pipe of the superstructure to the two vertical extensions when the plaintiff arrived at the car lot. Plaintiff was also in the used car business in the same city. The defendant had telephoned him earlier about some used cars that he had for sale and had asked him to come over and look at them. When plaintiff arrived the two employees of defendant were having difficulty in coupling the horizontal pipe to the south upright extension. After some casual conversation the defendant said in a jocular manner to plaintiff, "Well, if I was as tall as you are, I'd just reach up there and screw it in for the boys." To which plaintiff replied, "Yes. All right. I will." He then climbed up and straddled the lower horizontal pipe, and wrapped his legs about the upright securing himself. Next he guided the top pipe into the coupling in the extension of the south upright and gave it a turn or two with his hands. The defendant then asked him to tighten the pipe with a wrench, and handed up to him a 2-foot pipe wrench. Plaintiff leaned over to take the wrench from the defendant and in doing so grasped the south upright extension for support. Just as he was about to take the wrench from the hands of the defendant the extension gave way and he fell to the sidewalk sustaining three fractured vertebrae and other injuries. The trial court awarded him damages and it is from this judgment that the defendant has appealed.

Appellant urges as grounds for reversal that the evidence is insufficient to sustain the finding of the trial court that the injury resulted from his negligence, and secondly, that the plaintiff assumed the risk of injury when he climbed onto the framework.

The defendant rested at the close of the plaintiff's case and offered no proof in defense.

Appellant pleaded in his answer and makes the argument here in support of his second ground for reversal of the judgment that the plaintiff acted with full knowledge of all

the facts and circumstances surrounding his injury and assumed the risk of the matters which brought it about. This issue was resolved against appellant by an appropriate finding and this court is only concerned as to whether the finding is supported by substantial evidence. In *DeGraf* v. *Anglo California Nat. Bank*, 14 Cal.2d 87, 100 [92 P.2d 899], it is said that, ". . . before it can be said that one has 'assumed the risk' of a specified hazard, it must be shown that he had knowledge of the condition creating the hazard. One does not assume the risks of danger which he has no reason to anticipate." ▮ The main structure over the entrance appeared to be perfectly safe, and so it proved to be upon plaintiff climbing onto it. The danger lay in the extension which broke when plaintiff grasped it for lateral support. Taking hold of it for support is nothing more than any reasonable person would have done under the same circumstances. It was perfectly natural and reasonable to grasp the extension in leaning over to reach the pipe wrench. The extension was of the same size and kind of material as the pipe on which he was sitting, and he had no reason to anticipate that it would not afford the same degree of support. There was nothing in its appearance to indicate any inherent weakness.

The witness Slaughter in describing the pipe as he saw it on the ground after the accident testified: "I couldn't tell you whether it was an old break or a new one, but had broken off from the bottom where it had been screwed in, and not all the way around, about half way . . . It looked like it come loose. It looked like the thread could be cut too deep."

It is the established rule that whether a person had assumed the risk of injury in any particular case is a question of fact for the court or jury to determine. As is said in *DeGraf* v. *Anglo California Nat. Bank*, *supra*, "The question of knowledge and appreciation of a danger or the lack thereof in an action of this nature is ordinarily one to be determined by the jury from the facts of the case." And in *Wilmot* v. *Golden Gate Investment Co.*, 41 Cal.App.2d 664, 668 [107 P.2d 263], it is held that before an appellate court may say that a party has assumed the risk from which the injury occurred the evidence must show without substantial conflict that he had knowledge or means of knowledge of the existing danger, or that the danger was obvious. ▮ All of the evidence in this case is to the effect that the plaintiff had no knowledge or means of knowledge of the existing danger and under such

a state of facts this court may not set aside the finding of the trial court on the assumption of risk.

Plaintiff relies upon the doctrine of res ipsa loquitur to establish the negligence of the defendant and contends that the facts of this case give rise to the inference of negligence which the doctrine affords. As is said in *Hinds* v. *Wheadon*, 19 Cal.2d 458, 461 [121 P.2d 724], "This doctrine is applicable where a thing is shown to be under the exclusive management or control of the defendant or his servants and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care. In such cases an inference arises that the accident resulted from a want of proper care on the part of the defendants. (Citing authorities.) It is incumbent upon the defendant in such a case to bring forth evidence to rebut the inference of negligence. . . ." The defendant was obliged to exercise reasonable care to make the framework safe for the operation which plaintiff undertook for the reason that he invited him to work upon the structure. It is so held in *Shanley* v. *American Olive Co.*, 185 Cal. 552, 555 [197 P. 596], where it is said that the invitor is "required to use ordinary care for the safety of the persons he invites to come upon the premises. If there is danger attending upon such entry, or upon the work which the person is invited to do thereon, and such danger arises from causes or conditions not readily apparent to the eye, it is the duty of the owner to give such person reasonable notice or warning of such danger." Not only is it the duty of the owner to furnish a safe place for such an invitee to work, but this duty requires him "to make a reasonably careful inspection at reasonable intervals to learn of dangers not apparent to the eye." (*Devens* v. *Goldberg*, 33 Cal.2d 173, 178 [199 P.2d 943].) It cannot be said that the requirements of this rule were met by the defendant here. He should have tested the framework before he made his invitation to the plaintiff to use it as a staging. Nor can the defendant claim the benefit of lack of knowledge of the dangerous condition. It is said in *Hatfield* v. *Levy Brothers,* 18 Cal.2d 798, 806 [117 P.2d 841], that: "Where the dangerous or defective condition of the property which causes the injury has been created by reason of the negligence of the owner of the property or his employee acting within the scope of the employment, the owner of the property cannot be permitted to assert that he had no notice or knowledge of the defective or dangerous condition. . . ." The claim of lack

of knowledge where the extension was set by the employees of the defendant does not tend to refute the inference of his negligence. In *Biondini* v. *Amship Corp.*, 81 Cal.App.2d 751 [185 P.2d 94], a plank on a scaffold broke injuring a workman. The court there said at page 766: "The plank was obviously defective because it broke in half· with the weight of one man. It is quite significant, and the jury would be entitled to consider this fact on this issue, that the broken plank was not produced, and Carlson made no attempt to find it or to examine it to find out what caused it to break." Neither did the defendant in this case make any attempt to find the broken pipe or to determine what caused it to break. The trial court was free to consider this fact in determining whether the inference of negligence had been refuted.

The use which plaintiff was making of the framework is analogous to that made by workmen using a scaffold. In *Nolen* v. *F. O. Engstrum Co.*, 175 Cal. 464, 466 [166 P. 346], the court said: "The fact that while the plaintiff was at work upon the scaffold it fell and precipitated him to the ground was of itself sufficient evidence that the scaffold was defectively constructed." In that case it was held that the doctrine of res ipsa loquitur did apply.

We conclude that it applies in this case, and that the inference of the negligence of the defendant which it affords has not been refuted or overcome by other evidence. The inference is sufficient to sustain the finding of defendant's negligence.

The judgment is affirmed.

Nourse, P. J., and Goodell, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 22, 1952. Shenk, J., and Schauer, J., were of the opinion that the petition should be granted.