[Civ. No. 20494. Second Dist., Div. Three. Apr. 11, 1955.]

ROSE GILBERT, Appellant, v. PESSIN GROCERY COM-
PANY (a Corporation), Respondent.

Roger J. Pryor and Pauline Day Bakst for Appellant.

Moss, Lyon & Dunn, Gerold C. Dunn and Henry F. Walker for Respondent.

ASHBURN, J. pro tem.*—Appeal from judgment upon verdict for defendant in personal injury action. Plaintiff does not question the sufficiency of the evidence to sustain the verdict, but claims prejudicial error in (1) excluding certain evidence of a prior accident and (2) giving certain instructions and refusing others.

On October 11, 1951, after dark, plaintiff Rose Gilbert drove into the parking lot behind defendant's market building, which lot was maintained for the convenience of customers, and she was there as a prospective purchaser of some of defendant's goods, a business invitee. The parking lot was divided by a cement island or ledge which was about 6 inches high. This divider was the front line of numerous parking spaces marked off on the ground, some facing southeast and the others northwest. The market building occupied the east part of the property and the parking area the west portion. Plaintiff drove her car into a space to the west of the divider, which ran north and south. Her lights were on but she did not see the divider nor did her car strike it. She had never been there before and did not discover the existence of the divider or island until she stumbled over it and fell. When she drove up close to it and stopped with the front end of her car near the divider, there were cars parked to her right and left, but not immediately in front. She got out on the left side and her friend and companion, Mrs. Kathryn Stringer, alighted on the right. Mrs. Stringer was familiar with the parking lot and stepped over the divider without any difficulty. Plaintiff, though she says it was dark in the area, took a few steps forward (toward the market building), did not look down as she walked, saw no island or divider, stumbled on it and fell, sustaining injuries to her person.

Concerning lighting conditions plaintiff testified that as she was driving into the parking area she thought it was kind of dim; she saw no signs on top of the building; and no lights in the parking lot; there was no light shining up and

*Assigned by Chairman of Judicial Council.

down the island, which was the color of natural cement; the only lights she saw were coming through the entrance doorway; she probably did see lights on the front of the market. She and Mrs. Stringer testified that the place where she fell was dark, the parking area quite dark. Plaintiff also said she took Mrs. Mary Ridenour, who was night manager of the store, to the spot where she had fallen, told her it was dark and "it should be light up there" to which Mrs. Ridenour replied: "Yes, it is kind of dark here." Mrs. Stringer testified that plaintiff said "it is awfully dark" and the manager said "Yes, it is." This was substantiated by the Ridenour testimony to the extent that she said plaintiff claimed it was "a little dark" and she said "Yes, it is." Plaintiff also said that on her way to the scene with the manager she did see the island, but only when she was right against it.

It was proved that the building had three floodlights on the west side, near the roof, each having two 500-watt bulbs; that light came through the open door and five sets of windows over the entrance; the front or north side of the building had a row of neon lights; there was a large electric sign "Metrick's" on the roof and facing the parking area; and another one "Metrick's Free Parking" on the west boundary of that area; a street light at the north end of the parking, and lighted stores with large luminous signs across the street from the parking. The defense evidence was to the effect that all these lights, including the floodlights, were burning at the time of the accident. If this evidence be accepted the parking lot, including the spot where plaintiff stumbled on the island, was well illuminated. On the other hand plaintiff's showing, direct and circumstantial, was sufficient to warrant an inference that the floodlights were not burning at the time of the accident and that the place where she fell was dark.

In this setting counsel for plaintiff called to the witness stand Mr. Oliver Jones, who was defendant's manager of that store until late July, 1951, and asked him this question: "Q. Now, directing your attention to the parking lot on the west side of the premises there, at any time in the summer of 1951 was there an accident reported to you of someone falling over a raised portion of the divided area in the parking lot at night?" This evoked objections and considerable argument outside the presence of the jury. The court ruled that sufficient foundation for evidence of other accidents had not been laid. Finally an offer of proof was made in these words: "At this time we make the following offer of proof, that Mr.

Jones, if allowed to answer, would testify that in July of 1951 a woman fell over the island that divided the parking lot while walking toward the market at a time when one or more of the floodlights were out.'' After further argument the court sustained objections to the offer, plaintiff's attorney remarked: ''I can't see any way to lay a foundation'' and the judge said, ''Well, I think that ends it then.'' This latter remark of counsel was merely a confession that he could not lay a foundation such as required by the court nor do more than he had done in that regard. Viewed in the light of the immediate context and the preceding discussion it cannot be held a consent to the court's ruling; it was submission, not agreement, that was expressed.

Another preliminary matter is the contention that the ruling was correct because plaintiff's offer embraced only hearsay. ▆ One of the legitimate purposes of evidence of other accidents is the proving of notice to defendant of existence of a dangerous condition. When that is the objective a report made to defendant's responsible agent is not subject to the hearsay rule. (*People* v. *Lang Transp. Corp.*, 43 Cal.App.2d 134, 140-141 [110 P.2d 464].) If that were the only objection the evidence should have been received for the proper limited purpose and the jury instructed accordingly. If perchance there was the report but no such accident in fact, or if the circumstances were not comparable, it would be open to defendant to so show. (*Piollet* v. *Simmers*, 106 Pa. 95, 111 [51 Am.Rep. 496]; 65 C.J.S., § 234, p. 1052; see also *People* v. *La Macchia*, 41 Cal.2d 738, 749 [264 P.2d 15].)

The important question is whether the evidence was admissible at all. Construed together, as they should be in fairness, the quoted question and offer of proof amount to a tender of evidence that the former accident occurred at night and that a woman walking in the same direction as plaintiff fell over the island at a time when one or more of the floodlights were out.

The applicable general rule is well established and is stated in *Westman* v. *Clifton Brookdale, Inc.*, 89 Cal.App.2d 307, 312 [200 P.2d 814]: ''Evidence as to previous accidents, similar to the one in issue, is admissible upon the general proposition that such evidence tends to show the dangerous character of the place. Evidence showing that previous accidents have occurred under substantially the same general circumstances as the subsequent accident—the one in issue— tends to disclose the cause of the latter, tends to bring home

to the person maintaining the place where the injury occurred knowledge of the dangerous condition of such place, and tends to establish negligence on his part." Also in *Jaehne* v. *Pacific Tel. & Tel. Co.*, 105 Cal.App.2d 683, 689 [234 P.2d 165] : "Evidence of prior accidents which occurred under substantially the same general circumstances as the accident in question, is admissible to prove the existence of a defective or dangerous condition, to prove negligence, to prove notice, and to disclose the cause of the accident in question."

It will be observed that such proof may serve at least four different evidentiary functions,—as proof of (a) existence of defective or dangerous condition, (b) the cause of the subject accident, (c) knowledge or notice of the dangerous condition, (d) negligence in permitting that condition to continue. But it is not necessary that the proffered evidence of previous accidents be probative in all those respects. If it fairly raises an inference upon one phase of the case it is admissible. Specifically, it should be received if it tends to prove a dangerous condition, even if it be not enough to constitute proof upon any of the other matters. This point is brought out by Professor Wigmore's treatment of the subject; he discusses separately the use of prior accidents for different purposes. Volume 2, Wigmore on Evidence (3d ed.), section 458, at page 472: "The mass of precedents dealing with the use of other injuries (or 'accidents') as evidencing the dangerousness of a place or a machine are concerned with an inference of precisely this form, *i.e.* an inference as to the *harmful tendency or capacity* of the machine, highway, building, or track, as indicated by the occurrence of such harm to *human beings in other instances*.

". . . the object of the inference is not to show previous acts of human negligence, nor even (directly and necessarily) a present negligence. The purpose is merely to show the nature of the machine or the place, as having a tendency to produce such human injuries; just as copper acids may have a tendency to destroy herbage or strychnia a tendency to produce convulsions. If it can be shown what that tendency is, it may then be possible to show that the maintenance of a place or machine of that tendency—*i.e.* likely to cause such harm—is negligence. But this additional conclusion is not necessarily involved in the evidential purpose, which seeks simply the illustration of the nature of the thing or the place by its observed effects." See also paragraph 3 on page 475.

Counsel for appellant argues that the disputed evidence should have been received as proof of a dangerous condition of a continuous nature; that the concrete divider was of natural color and constituted a dangerous barrier when the lot was dark; that that was the condition at the time of the accident. ▓▓ In considering this contention it should be observed that the proferred evidence related to an accident when one or two of three floodlights were not burning, while the evidence at bar spells either of two conditions,—all floodlights out or all of them burning. For present purposes we must assume that none was lighted. So appellant's position becomes one of claiming that this area, if dangerously dark when one or two floodlights were off, was equally dangerous, or more so, when none was lighted. This seems to be sound reasoning and reduces the appellant's claim to one of proper proof of a dangerous condition of the lot and notice thereof to defendant through its former manager. To this respondent's counsel replies that the conditions of the two accidents are not shown to have been substantially the same. That is the general test of admissibility. (*Westman* v. *Clifton's Brookdale, Inc., supra,* 89 Cal.App.2d 307, 312; *Wilkerson* v. *City of El Monte,* 17 Cal.App.2d 615, 618 [62 P.2d 790] ; *Magnuson* v. *City of Stockton,* 116 Cal.App. 532, 535 [3 P.2d 30] ; *Long* v. *John Breuner Co.,* 36 Cal.App. 630, 639 [172 P. 1132] ; *McCormick* v. *Great Western Power Co.,* 214 Cal. 658, 664 [8 P.2d 145, 81 A.L.R. 678] ; *Dyas* v. *Southern Pac. Co.,* 140 Cal. 296. 304 [73 P. 972] ; *Gorman* v. *County of Sacramento,* 92 Cal.App. 656, 664 [268 P. 1083] ; *Young* v. *Bank of America,* 95 Cal.App.2d 725, 729 [214 P.2d 106, 16 A.L.R.2d 1155] ; *George* v. *City of Los Angeles,* 51 Cal.App.2d 311, 315 [124 P.2d 872].) ▓▓ The cited cases are typified by *Magnuson* v. *City of Stockton, supra,* 116 Cal.App. 532, 535, which says: ". . . the rule is well settled that in order to permit the admission of testimony of previous accidents it is not necessary that it be shown that such accidents occurred under circumstances *precisely* the same as those characterizing the accident in question, but it is sufficient *that they are similar in their general character.* (*Robinson* v. *Western States Gas & Elec. Co.,* 184 Cal. 401 [194 P. 39] ; *Long* v. *John Breuner Co.,* 36 Cal.App. 630 [172 P. 1132].)'" Counsel for appellant rely largely upon cases such as *Martindale* v. *Atchison, T. & S. F. Ry Co.,* 89 Cal. App.2d 400, 411 [201 P.2d 48], claiming, in essence, that all of the circumstances must be shown to have been generally

similar before a foundation can be laid for receiving the evidence. In their brief counsel stress absence of proof of these things: ''(3) That the woman assertedly involved in the prior accident was normal (if her alleged fall was because of old age and disability, crippled condition, blindness, instability because of some existing injury such as a broken leg coupled with use of crutches, any one of which would render the prior accident inadmissible); (4) That the prior accident was caused by or resulted from the same thing which plaintiff here claimed caused her to fall (if the former accident resulted from slipping on grease dropped from cars being parked or from spilled milk or other liquids or from fruit peelings, etc., it would be inadmissible); (5) That the climatic conditions were remotely similar (there may have been a heavy fog on the prior occasion or it may have been raining heavily).'' This argument introduces into the foundational proof the actions of other individuals at the time of previous accidents and thus would make the foundation-laying an insuperable task. We again quote the Magnuson case, page 535: ''This rule must necessarily be true, for it would be very difficult, if not impossible, to show that two persons were drowned in *exactly* the same place and in the same manner. Accidents do not happen that way.'' Appellant's argument would inject a false quantity into the problem now before us, which is whether the continuing condition of the parking lot was such that one accident in the dark would be evidential in a later case.

*Dyas* v. *Southern Pac. Co.*, 140 Cal. 296, 304 [73 P. 972] dealt with a derrick-car accident alleged to be due to an insecure foundation to which the derrick-car was fastened. Having shown that there was no change of condition during the intervening period the court held that evidence of a previous like accident was admissible. Then said: ''Appellant contends that the difference in the derricks, the adjustment of the bucket, and the method of operation, made this evidence inadmissible, that it was too remote, and an entirely collateral matter. The character of the derrick, however, could make no difference. The pertinency of the evidence was as to the insecure condition of the substructure, upon which the derrick rested, and defendant's knowledge of it and inattention to it. . . . The Dyas derrick was operated upon the same substructure, as far as the method by which it was attached was concerned, and the condition of that substructure at the time of the accident was a proper subject of inquiry.

If five years previously, the substructure was in such a condition as to fail to retain the derrick in its hold upon it, proof of that fact, coupled with proof of no repairs, was matter properly to go before the jury, in determining whether the substructure was not in a similar, if not worse condition, when Dyas was killed, and whether the accident was not directly attributable to that fact.'' This case supports appellant's position, not that of respondent.

The same thought was brought out by Mr. Justice Shinn in *Wilkerson* v. *City of El Monte*, 17 Cal.App.2d 615, 618-620 [62 P.2d 790]. Plaintiff sued for injuries claimed to have been caused by a dip in an intersection, she being thrown to the top as the automobile occupied by her passed over it. The question was one of dangerous or defective condition. The trial judge received evidence of previous accidents without regard to the speed of the respective cars and this was held to be error. At page 618 the court said: ''In cases of accident due to the alleged dangerous condition of premises it is proper to receive evidence of earlier accidents occurring at the same place. It tends in some degree to prove the condition to have been a dangerous one and that the accident in question may have resulted from such condition. It may also tend to prove that the one charged with the duty of maintaining the premises knew or should have known of the condition. (*Long* v. *John Breuner Co.*, 36 Cal.App. 630 [172 P. 1132].) But evidence along this line should not be received without some safeguards. It should be shown that the physical condition of the premises was substantially the same at the time of each accident. That fact was not disputed in the present case. And where other factors enter into the case, such as the conduct of the persons injured in the use of the premises, evidence of the results of other accidents is of no value unless a showing is made as to the circumstances and conditions under which the several accidents occurred.'' At page 620: ''But as we have pointed out, the speed of the cars was a factor that could not be disregarded if the evidence was to have any value. The mere fact that some automobiles bounced in crossing the depressions did not show that the condition of the intersection was either dangerous or defective although if it had been shown that they bounced in crossing at reasonable and ordinary speed the evidence would have had a very considerable value. . . . The question is not whether accidents do or do not occur; it is whether they occur under given conditions and the

all-important condition in the present case was whether such accidents occurred when cars crossed the intersection at usual and reasonable speeds.'' ▮ In other words, when the similarity depends upon the conduct of the actors in the accident, rather than the condition of the locale, the general similarity rule requires a matching of those elements (such was the Martindale case, *supra,* which involved a railroad crossing accident), but that is not necessary when the sole fact of dangerous condition of the premises is in issue. This is illustrated by the holdings in *Westman* v. *Clifton's Brookdale, Inc., supra,* 89 Cal.App.2d 308, 312; *Magnuson* v. *City of Stockton, supra,* 116 Cal.App. 532, 535; *Long* v. *John Breuner Co., supra,* 36 Cal.App. 630, 639; *Gorman* v. *County of Sacramento, supra,* 92 Cal.App. 656, 664. See also *Cohn* v. *New York etc. & H. R.R. Co.,* 6 App.Div. 196 [39 N.Y.Supp. 986]; *Cottman* v. *Federman Co.,* 71 Ohio App. 89 [47 N.E.2d 1009, 1011]; *Saunders* v. *A. M. Williams & Co.,* 155 Ore. 1 [62 P.2d 260, 263]; 65 C.J.S. § 234a(2), p. 1053.

▮ We hold that exclusion of the proffered evidence in this case was error; whether it effected a miscarriage of justice will be considered later.

▮ As to error claimed in giving of certain instructions. First, appellant complains of the giving of BAJI [1]140 reading as follows: ''General human experience justifies the inference that when one looks in the direction of an object clearly visible, he sees it, and that when he listens, he hears that which is clearly audible. When there is evidence to the effect that one did look, but did not see that which was in plain sight, or that he listened, but did not hear that which he could have heard in the exercise of ordinary care, it follows that either some part of such evidence is untrue or the person was negligently inattentive.'' This instruction is but a modern version of a truth long recognized, and quoted in *Zibbell* v. *Southern Pac. Co.,* 160 Cal. 237 at page 242 [116 P. 513]: '' 'It is a wild conceit that any court of justice is bound by the mere swearing; it is swearing credibly that is to conclude its judgment.' '' This instruction, or an earlier BAJI form of same, has been held not erroneous in *Curland* v. *Los Angeles County Fair Assn.,* 118 Cal.App.2d 691, 696 [258 P.2d 1063]; *La Branch* v. *Scott,* 82 Cal.App.2d 1, 9 [185 P.2d 823]; *Bischell* v. *State,* 68 Cal.App.2d 557, 563 [157 P.2d 41].

---

[1]Book of Approved Jury Instructions, Los Angeles Superior Court.

But, says appellant's counsel, the instruction should not have been given because the evidence shows that the island was not plainly visible and hence it was misleading. This argument overlooks the fact that defendant's evidence, if accepted, proved the island and the place of plaintiff's fall to be amply illuminated. ▮ It also overlooks the rule that each side has a right to have the jury instructed on any theory of its case which finds substantial support in the evidence (*Sills* v. *Los Angeles Transit Lines,* 40 Cal.2d 630, 633 [255 P.2d 795] ; *Daniels* v. *City & County of San Francisco,* 40 Cal. 2d 614, 623 [255 P.2d 785]), and regardless of the judge's own acceptance of that theory (*Kelley* v. *City & County of San Francisco,* 58 Cal.App.2d 872, 876 [137 P.2d 719]). The instruction does not, as claimed, assume that the curb was ''clearly visible'' and ''in plain sight.'' It leaves the jury to determine whether that hypothesis is or is not established.

Counsel further says that the instruction unduly emphasized the duty to look and see because the matter was also covered by BAJI instruction 213C which was given, particularly the portions reading as follows: ''The owner . . . is entitled to assume that the invitee will perceive that which would be obvious to him upon the ordinary use of his own senses. . . .

''Each, the invitee and the invitor, so long as he is exercising ordinary care and no circumstance exists that either causes him or would cause a reasonably prudent person in his position to think differently, has a right to assume that the other is or will be possessed of normal faculties of sight and hearing and will exercise ordinary care, and has the right to rely on that assumption.'' There is no merit in this argument. The one instruction (140) tells the jury the effect of testimony as to what a witness did and the other (213C) speaks of the assumptions that each party to the case may make as to what the conduct of the other has been or will be. There was no error in giving this instruction BAJI 140.

Next, appellant charges error in the giving of two additional instructions in conjunction with said 140. The two additional instructions are set forth in the margin.[2] The real

---

[2]''The defendant was not obliged to give the plaintiff notice of a danger which might arise from causes or conditions which were readily apparent to the eye; the defendant was entitld to assume that the plaintiff would perceive and see that which would be obvious to her upon the ordinary us of her sense of sight, and the defendant was not required to call plaintiff's attention to or notify her of a condition

complaint is that their combined effect is undue emphasis upon defendant's theory that the island was in plain sight and plaintiff negligent in not seeing it. ■ There is some overlapping of instructions here, a thing very difficult for a judge to avoid in the stress of the trial. But the jurors were told that there was no such intention on the part of the judge. "If in these instructions, any rule, direction or idea has been stated in varying ways, no emphasis thereon is intended by me, and none must be inferred by you. For that reason, you are not to single out any certain sentence, or any individual point or instruction, and ignore the others, but you are to consider all the instructions and as a whole, and to regard each in the light of all the others. . . .

"I have not expressed, nor intended to express, nor have I intended to intimate, any opinion as to which witnesses are, or are not, worthy of belief; what facts are, or are not, established; or what inferences should be drawn from the evidence. If any expression of mine has seemed to indicate an opinion relating to any of these matters, I instruct you to disregard it." And an examination of the instructions in their entirety reveals no intent on the part of the judge to slant them in either direction. The following language from *Faeh* v. *Union Oil Co.*, 107 Cal.App.2d 163, 165 [236 P.2d 667], is immediately pertinent: *"Did the trial court commit prejudicial error in giving three instructions concerning the same subject, to wit, whether defendants' vehicle entered the intersection when plaintiff's vehicle was on a through highway and constituted an immediate hazard?*

*"No.* The jury was properly instructed that even though the propositions governing defendant's conduct were stated in various ways neither the repetition of instructions nor any other behavior on the part of the judge in delivering the charge was meant to indicate in one way or another what he thought of the controversy.

"Clearly the mere repetition of instructions upon the same subject in view of the trial judge's admonition did not

---

which would be readily apparent to her upon the ordinary use of her eyesight. . . .

"Inasmuch as the amount of caution used by the ordinary prudent person varies in direct proportion to the danger known to be involved in his undertaking, it follows that in the exercise of ordinary care, the amount of caution required will vary in accordance with the nature of the act and the surrounding circumstances. To put the matter in another way, the amount of caution required by the law increases as does the danger that reasonably should be apprehended."

constitute prejudicial error." To the same effect are *Dick* v. *Schoener*, 120 Cal.App.2d 230, 233 [260 P.2d 965]; *Rose* v. *Tandowsky*, 80 Cal.App.2d 927, 932 [183 P.2d 347]. We find no prejudicial error in the instructions which were given.

■ Refusal of certain requested instructions is urged as error. One of them reads: "An invitee walking from her car parked in a parking lot provided by a retail store keeper to the retail store has a right to assume that there were no obstructions or other dangerous agencies that would interfere with her reasonably safe travel thereon." This request is defective in that it omits the qualification that the person referred to must be exercising care herself. The giving of that instruction would have been erroneous. (*Roller* v. *Daleys, Inc.*, 219 Cal. 542, 546-547 [28 P.2d 345]; *Angier* v. *Bruck*, 56 Cal.App.2d 55, 58 [131 P.2d 876]; *Carlson* v. *Shewalter*, 110 Cal.App.2d 655, 659 [243 P.2d 549].)

The court refused to give two other instructions requested by plaintiff, which are set forth in the margin.[3] It is true that the subject matter is covered by BAJI 213C, which was given; it opens with this sentence: "Toward an invitee, he who extended the invitation, express or implied, is obliged to refrain from active negligence and to exercise ordinary care to keep the premises in a condition reasonably safe for the invitee." ■ But this language is general while the requests of plaintiff gave specific application of the same principle to her theory of the case. They are correct in their content and appellant should not have been required to rest upon generalities. (*Barnett* v. *Garrison*, 93 Cal.App. 2d 553, 558 [209 P.2d 426]; *Stout* v. *Southern Pac. Co.*, 127 Cal.App.2d 491, 503 [274 P.2d 194].) At least one of these requested instructions should have been given. But this ruling alone would not be of such serious consequence as to require a reversal.

---

[3] "You are instructed that if a parking lot provided by the storekeeper as an adjunct to a retail store is used as a passageway between the parked cars and the store, the storekeeper owes a duty to his customers or prospective customers to keep the parking lot in a reasonably safe condition for use as a passageway and to use ordinary care to avoid accidents and injuries to his customers or prospective customers using the parking lot for that purpose. . . .

"You are instructed that defendant as a keeper of a public place of business owed a duty to his customers and prospective customers to keep his premises and the means of ingress thereto and the parking lot maintained for his customers in a reasonably safe condition and to use ordinary care to avoid accidents or injuries to his customers. To fail in such a duty would constitute negligence."

■ Another rejected request is set forth in the margin.[4] It was modeled on BAJI 213E. A similar instruction was held properly refused in *Curland* v. *Los Angeles County Fair Assn., supra,* 118 Cal.App.2d 691, 697. This court there said: "The instruction, in part, is argumentative and not a statement of the law. Insofar as it stated the law correctly, the subject matter was fully covered by instructions given."

■ Appellant also complains of refusal of an instruction (BAJI 213J (new)), reading as follows: "If a dangerous or defective condition of or on property is created by the negligent conduct of the owner or his employee acting within the scope of the employment, and if an invitee thereafter suffers injury, of which such condition was a proximate cause, in any action that the invitee may bring for damages for such injury, the law conclusively presumes that the owner had knowledge of said condition from the time of its creation." It is a correct statement of law and was not adequately covered elsewhere. BAJI 213C does not do so[5] because it omits the statement that defendant is charged with knowledge when his own servant has negligently created a dangerous condition. (See *Hatfield* v. *Levy Brothers,* 18 Cal.2d 798, 806 [117 P.2d 841]; *Lorenz* v. *Santa Monica etc. Sch. Dist.,* 51 Cal.App.2d 393, 401 [124 P.2d 846]; *Sanders* v. *MacFarlane's Candies,* 119 Cal.App.2d 497, 501 [259 P.2d 1010]; *Calame* v. *Stevens,* 110 Cal.App.2d 45, 48 [242 P.2d 109].) From this knowledge flows an obligation

---

[4] "When a retail store is open for business, one who enters upon the premises, which includes a parking lot provided for prospective customers, to purchase some commodity or service or to present one's sale [sic] as a prospect for becoming a buyer, or to transact any business, embraced within the business of the store, with the owner or its agent or employee, does so at the implied, if not the express, invitation of the owner of the store, and is called an invitee. Upon that owner the law places the duty of exercising ordinary care so as not unnecessarily to expose the invitee to danger or accident and, to that end, to keep in a reasonably safe condition the parking lot, aisles, passageways, and means of ingress and egress between the parking lot and the store made available for the invitee's use, and which the latter is expressly or impliedly invited to use."

[5] It contains this phraseology: " 'If there is danger attending upon the entry, or upon the work which the invitee is to do on the premises, and if such danger arises from conditions not readily apparent to the senses, and if the owner has actual knowledge of them, or if they are discoverable by him in the exercise of ordinary care, it is his duty to give reasonable warning of such danger to the invitee. The owner is not bound to discover defects which reasonable inspection would not disclose, and he is entitled to assume that the invitee will perceive that which would be obvious to him upon the ordinary use of his own senses.' "

to give warning unless the danger is an obvious one. (*Popejoy v. Hannon,* 37 Cal.2d 159, 170 [231 P.2d 484].) The gravity of this error becomes apparent when the status of the issue of illumination is recognized. Plaintiff made an earnest effort to prove directly or circumstantially that alterations were under way in the market and that part of that job was the installation of a time clock to control the operation of the floodlights, which had previously operated in response to a switch thrown by hand; that that work was still in progress or just completed and the clock, due to interruption of power during the day, failed to turn the lights on until after the normal time, thus accounting for the darkness which plaintiff claimed to exist at the time and place of the accident. The evidence, though weak, was sufficient to support this theory. To so find may have called for a modicum of speculation by the jury, but not too much (see *Miller* v. *Southern Pac. Co.,* 117 Cal.App.2d 492, 507 [256 P.2d 603]; *Finnegan* v. *Royal Realty Co.,* 35 Cal.2d 409, 424 [218 P.2d 17]). If this did happen it would be understandable that defendant's manager, who worked inside the store, did not know of it. The instruction which was given implies that defendant had a reasonable time for discovery before becoming liable, while the requested one charged defendant with immediate knowledge and duty to give warning if the condition was negligently created and the danger not an obvious one. The evidence which warrants the inference of the alleged condition also sustains one of negligence in its creation.

■ The fact that that work was done by an independent contractor is of no consequence for the duty which defendant owed its patrons with respect to the safety of the premises to which they were invited is a nondelegable one. (*Bazzoli* v. *Nance's Sanitarium, Inc.,* 109 Cal.App.2d 232, 237 [240 P.2d 672]; *Knell* v. *Morris,* 39 Cal.2d 450, 456 [247 P.2d 352]; Prosser on Torts, p. 643.) If the floodlights were operated by the new clock on the day of the accident, if it failed to turn them on until after that event, if that caused a dark and dangerous condition in the parking lot, defendant was chargeable with knowledge of the fact; appellant had a right to have the jury so advised; and the refusal so to do constituted serious error. That the jurors were interested in this subject is evidenced by their returning from the jury room for further instructions on it. "THE FOREMAN: Yes, we would like to reread that portion of the instructions to the jury that pertains to the duty of the invitor to the invitee

in respect to liability of the invitor, and that portion of law pertaining to obvious hazards." The court then reread BAJI 213C, which, as above noted, does not cover this matter of imputed knowledge.

 Our final question is whether there has been a miscarriage of justice. "In determining, from a consideration of the entire record, whether the error prejudiced plaintiffs' rights (Const. art. VI, § 4½), the rule is no different from that applicable in a criminal case and stated as follows: 'If it cannot be said that, in the absence of the error complained of, a different verdict would have been improbable, the erroneous ruling constitutes a miscarriage of justice within the meaning of the constitutional provision.' " (*Daniels* v. *City & County of San Francisco,* 40 Cal.2d 614, 623, 624 [255 P.2d 785].) In *Westman* v. *Clifton's Brookdale, Inc., supra,* 89 Cal.App.2d 307, 314, this court concluded as follows: "We cannot say that had the evidence been received and considered by the jury, a different result would not have ensued. The exclusion of the evidence referred to was reversible error."

We are reviewing the second trial of this case. The jury in the first trial disagreed. The verdict was 9 to 3 in the second. It appears that the court erroneously excluded evidence of a former accident and refused a correct instruction of considerable importance to plaintiff's case. After an "examination of the entire cause, including the evidence" (commanded by Const. art. VI, § 4½), we cannot say that, in the absence of the errors found herein a different verdict would have been improbable. This spells a miscarriage of justice.

The judgment is reversed.

Shinn, P. J., and Vallée, J., concurred.

A petition for a rehearing was denied May 10, 1955, and respondent's petition for a hearing by the Supreme Court was denied June 8, 1955.